## COMMONWEALTH *vs.* OSCAR L. HARRIS.

Norfolk. February 7, 1985. — July 3, 1985.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Identification. Evidence,* Exculpatory, Judicial discretion. *Practice, Criminal,* Instructions to jury.

The facts that a police officer had told a stabbing victim who was hospitalized that they would be bringing in someone who matched the description of her assailant she had given and that, when the victim identified the defendant in her hospital room, the defendant was the only black male in the room and was standing between two uniformed police officers did not, in the circumstances, make the confrontation impermissibly suggestive. [298-300]

At the trial of a defendant charged with assault with intent to murder and assault and battery by means of a dangerous weapon, the judge did not err in excluding evidence of a similar attack which occurred while the defendant was in custody, offered by the defendant as tending to show that someone else had committed the crime with which he was charged, where there were differences between the crimes and the particulars in which they were similar were not particularly distinguishing or unique. [300-301]

At the trial of a criminal case, the judge did not err in failing to include an instruction on the Commonwealth's burden of proof as part of supplemental instructions given in response to a question from the jury. [301]

INDICTMENTS found and returned in the Superior Court Department on January 4, 1982.

A motion to suppress evidence was heard by *Thomas E. Dwyer,* J., and the cases were tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Dorian Bowman* for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J.  The defendant appeals from his convictions of assault with intent to murder and assault and battery by means of a dangerous weapon. He argues that the trial judge erred in denying his motion to suppress the victim's identifications of him; in excluding evidence of a similar crime that occurred while he was in custody; and in failing to include, in a supplemental jury instruction, an instruction on the Commonwealth's burden of proof. We affirm the convictions.

We set forth the evidence relevant to the issues raised by the appeal. On December 28, 1981, at approximately 11:50 P.M., the victim, an eighteen year old woman, was returning to her home in Milton on an MBTA bus. She saw the defendant get on the bus, walk past her, and take a seat a short distance behind her. When the bus reached her stop, she got off alone, waited for the bus to start up again, crossed the street and began the ten minute walk home. As she crossed the street, she heard the bus stop again, and saw the defendant get off the bus. Shortly thereafter, the defendant came up behind her and put his hand across her mouth. When she screamed, he told her to "[s]hut up," and that he was going to kill her. He turned the victim around to face him, threw her to the ground, and tore off the gold chains that were around her neck. She managed to get away and run a few steps, but the defendant caught her and again threw her to the ground. He took out a knife and stabbed her in the neck, head, and hands. At that moment, several cars drove by and stopped. Several teenaged males jumped out of one of the cars and chased the defendant, while the occupants of another car took the victim to the hospital.

The youths eventually chased the defendant to the front porch of a nearby house. A police officer arrived and found the defendant standing on the front porch with the three youths standing on the lawn surrounding him. The youths told the officer about the attack and the chase. After confirming with the police dispatcher that a stabbing victim was being treated at the hospital, the officer placed the defendant under arrest. Shortly after he had arrested the defendant, the officer heard a radio broadcast of the description that the victim had given

of her assailant. She described her assailant as a black male, around twenty-six years old, wearing a brown leather jacket and dark pants. The defendant matched that description. Two police officers then brought the defendant to the hospital for identification.

At the hospital, a police officer told the victim that they had "picked up somebody with your description. We are going to bring him in." About five minutes later, two police officers walked into the victim's hospital room. The defendant stood between them with his hands handcuffed behind his back. Both police officers were white and were in uniform. Neither officer said anything to the victim. The victim looked at the defendant and said, "That's him" or "That's the man that did it." The officers then took the defendant to the police station.

1. *Motion to suppress identifications.* The defendant moved to suppress the victim's identification of him at the hospital alleging that the procedures used by the police were unnecessarily suggestive. He also moved to suppress any subsequent in-court identification by the victim on the ground that it would be tainted by the inadmissible out-of-court identification. After a hearing, the trial judge denied the motion to suppress. He concluded that the one-on-one hospital confrontation, viewed in the totality of the circumstances, was not so unnecessarily suggestive as to deny the defendant due process of law, and that, therefore, the out-of-court as well as the in-court identifications were admissible. The defendant contends that the one-on-one confrontation was unnecessary because the victim was not seriously injured and therefore a formal line-up could have been conducted after the victim left the hospital or the following day. He also argues that the procedures used by the police were unnecessarily suggestive. Specifically, he points to the police officer's statement to the victim that they would be bringing someone in who matched the description she had given, to the fact that the defendant was the only black male in the hospital room when the identification took place, and to the fact that a uniformed police officer stood on either side of him, making it apparent that he was under arrest. There was no error.

We have repeatedly held that due process rights are not violated when police arrange a one-on-one confrontation between the victim and a suspect promptly after a criminal event occurs. See, e.g., *Commonwealth* v. *Leaster, ante* 96, 102-104 (1985); *Commonwealth* v. *Howell,* 394 Mass. 654, 660-661 (1985); *Commonwealth* v. *Barnett,* 371 Mass. 87, 92 (1976), cert. denied, 429 U.S. 1049 (1977). Exigent or special circumstances are not a prerequisite to such confrontations. *Commonwealth* v. *Barnett, supra. Commonwealth* v. *Coy,* 10 Mass. App. Ct. 367, 371 (1980). "[I]t makes no difference that the witness's life is not in such jeopardy as to make imperative the immediate preservation of the witness's account of the event. *Commonwealth* v. *Barnett, supra* at 92. The procedures are 'justified by the need for efficient investigation in the immediate aftermath of crime. . . . To have the witness view the suspect while his recollection or mental image of the offender is still fresh, before other images crowd in or his attempts to verbalize his impressions can themselves distort the original picture, provides the witness with good opportunity for an accurate identification. . . . A further consideration is that prompt confrontation yielding a negative result, besides freeing the innocent, informs the police that a possible predisposition on their part is or may be in error and releases them quickly to follow another track.' (Citations omitted.) *Id.*" *Commonwealth* v. *Leaster, supra* at 103.

The defendant has not shown that the procedures used at the hospital added any "'special elements of unfairness' . . . as might take the case out of the general class permitting a confrontation without a lineup" (citation omitted). *Commonwealth* v. *Barnett, supra* at 93. Some elements of suggestiveness are inherent in all such confrontations. The police officer's statement to the victim that they would be bringing someone in who matched the description she had given was not so suggestive as to make the confrontation unfair. See *Commonwealth* v. *Leaster, supra* at 103-104; *Commonwealth* v. *Perretti,* 20 Mass. App. Ct. 36, 41-42 (1985). "The witness knows [s]he would not be asked to make an identification unless the police had reason to suspect the detainee's involvement."

*Commonwealth* v. *Perretti, supra* at 42, quoting *Common-wealth* v. *Bicks,* 17 Mass. App. Ct. 574, 583 (1984).

Because we conclude that the hospital identification was not improper, we need not address the defendant's contention that the subsequent in-court identification was tainted by the one-on-one confrontation and should have been excluded.

2. *Evidence of another crime.* The defendant argues that the judge erred in excluding evidence of another crime, that occurred while the defendant was in custody. The defendant sought to introduce evidence that on March 15, 1982, at approximately 1:00 P.M., a black male, approximately 5' 9", in his twenties, wearing a leather jacket, dark brown pants and dark shoes, assaulted a twenty-eight year old female who was walking her dog in the Arnold Arboretum. As in this case, the assailant approached the victim from behind, threatened to kill her, and stabbed her with a knife when she tried to run.

A defendant may introduce evidence that tends to show that another person committed the crime or had the motive, intent, and opportunity to commit it. *Commonwealth* v. *Graziano,* 368 Mass. 325, 329 (1975). *Commonwealth* v. *Murphy,* 282 Mass. 593, 597 (1933). He may introduce evidence "to show that other crimes of a similar nature have been committed by some other person when the acts of such other person are so closely connected in point of time and method of operation as to cast doubt upon the identification of defendant as the person who committed the crime." *Commonwealth* v. *Keizer,* 377 Mass. 264, 267 (1979), quoting *State* v. *Bock,* 229 Minn. 449, 458 (1949). "The evidence should not be too remote in time or too weak in probative quality, and it should be closely related to the facts of the case against the defendant." *Commonwealth* v. *Graziano, supra* at 329-330. See *Commonwealth* v. *Murphy, supra* at 597-598. Whether the evidence meets those conditions is a decision for the trial judge, who has considerable discretion to admit or exclude it. *Commonwealth* v. *Keizer, supra* at 267. *Commonwealth* v. *Murphy, supra* at 598. In this case, the judge did not abuse his discretion.

While there are some similarities between the crime with which the defendant was charged and the attack in the Arboretum,

the points of similarity are not particularly distinguishing or unique. Both incidents involved a black male in his twenties, who was approximately 5' 9" tall, and wore a leather jacket. Both men used a knife, and threatened to kill the victims. On the other hand, the second attack occurred over two months after the crime with which the defendant was charged, at a location over three miles away, and at a different time of day. The defendant was described as wearing a brown leather jacket, while the other assailant was said to have worn a black leather jacket. In view of these differences, and the lack of uniqueness in the manner of commission of the crimes, the judge was warranted in concluding that the evidence was too weak in probative value to be admitted.

3. *The jury instructions.* The defendant argues that the judge erred in failing to include an instruction on the Commonwealth's burden of proof as part of supplemental instructions given in response to a question from the jury. The defendant did not object to the judge's failure to give such an instruction. Therefore, the issue is deemed to be waived. See *Commonwealth* v. *Bongarzone,* 390 Mass. 326, 346 (1983). In any event, there is no merit in the defendant's argument. "The judge in giving further instructions is not required to repeat all aspects of his prior charge." *Commonwealth* v. *Sellon,* 380 Mass. 220, 233-234 (1980). Viewed in its entirety, the charge to the jury was "full, fair, and adequate," *Commonwealth* v. *King,* 366 Mass. 6, 10-11 (1974), and accurately conveyed to the jury the burden of proof carried by the Commonwealth.

*Judgments affirmed.*