COMMONWEALTH vs. EDWARD McMASTER.

Middlesex.    November 20, 1985. — March 26, 1986.

Present: BROWN, KAPLAN, & WARNER, JJ.

*Identification. Practice, Criminal,* Instructions to jury, Comment by judge, New trial, Assistance of counsel. *Joint Enterprise.*

At the hearing of a motion to suppress a robbery victim's identification of the defendant in a hospital waiting room about an hour after the robbery, the evidence, even though conflicting, supported the judge's conclusion that there were no special elements of unfairness in the confrontation as would require suppression of the identification. [725-726]

At the trial of a robbery case, the judge's instructions to the jury on identification of the perpetrator of the crime did not create a substantial risk of a miscarriage of justice by reason of the judge's omission of certain portions of the charge recommended in *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 310-311 (1979), where the judge stressed the Commonwealth's burden of showing the accuracy of the defendant's identification beyond a reasonable doubt, instructed the jury to consider the circumstances under which the identification was made, and avoided linking the reliability of the identification to the victim's veracity. [726-728]

At the trial of two indictments, one charging larceny of a motor vehicle and the other charging armed robbery, the judge's instructions to the jury on joint enterprise, which conveyed the impression that, if the defendant and another were jointly involved in the armed robbery, the defendant could be found guilty of larceny of the automobile regardless of his participation or intent with respect to that crime, created a substantial risk of a miscarriage of justice requiring reversal of his conviction for larceny of a motor vehicle. [728-733]

In the circumstances, certain remarks by the judge to defense counsel in a criminal case, made in an attempt to curtail unnecessarily repetitive cross-examination, did not amount to an abuse of discretion. [733-734]

The judge in a criminal case did not err in denying the defendant's motion for a new trial based on a claim of ineffective assistance of counsel, where the judge was warranted in finding, on conflicting affidavits, that the defendant chose to defend on certain theories against the advice of counsel, and where trial counsel's decisions not to call certain witnesses were conscious tactical judgments which were not manifestly unreasonable. [734-736]

INDICTMENTS found and returned in the Superior Court Department on August 31, 1981.

A motion to suppress evidence was heard by *John P. Forte, J.,* sitting under statutory authority, and the cases were tried before *Paul K. Connolly,* J.

The case was submitted on briefs.

*Edward A. McMaster,* pro se.

*Scott Harshbarger,* District Attorney, & *Natalea Skvir,* Assistant District Attorney, for the Commonwealth.

WARNER, J. The defendant was convicted of armed robbery (G. L. c. 265, § 17) and larceny of a motor vehicle (G. L. c. 266, § 28[*a*]) after a jury trial in the Superior Court. The defendant's appeal raises several issues. Where necessary, we state the relevant facts separately.

1. *Motion to suppress.* The defendant argues that the motion judge erred in failing to suppress the victim's pretrial identification of the defendant and any subsequent in-court identification because the identification procedure was unnecessarily suggestive and conducive to irreparably mistaken identification.

"We begin our review with the well-settled proposition that the judge's findings of fact are 'binding in the absence of clear error . . . and [we] view with particular respect the conclusions of law which are based on them.' *Commonwealth* v. *Correia,* 381 Mass. 65, 76 (1980). While the judge's ultimate findings of fact and rulings of law, as they bear on issues of constitutional dimension, are open for reexamination by this court, such ultimate findings are 'entitled to substantial deference by this court.' *Commonwealth* v. *Bookman,* 386 Mass. 657, 661 n.6 (1982). Questions of credibility are, of course, for the . . . judge to resolve. *Commonwealth* v. *Meehan,* 377 Mass. 552, 557 (1979)." *Commonwealth* v. *Bottari,* 395 Mass. 777, 780 (1985).

Our summary of facts is taken from the judge's findings on the motion to suppress, amplified by some recourse to the transcript of the hearing. On August 15, 1981, Douglas Bolduc was working alone at a gas station on Memorial Drive in Cambridge. About 9:45 P.M., two men, both carrying guns,

entered the well-lighted station building. Bolduc was forced to the floor. He heard a gun go off. One of the men, who was standing next to Bolduc, told him to get up and go into a back room. Before telling Bolduc to lie down in the back room, the man took $150 that Bolduc had in his pocket. Both intruders then left. Bolduc got up and saw them drive away. During the incident, Bolduc looked directly at the man who had taken the money from him for about twenty-five seconds and heard him speak twice. Bolduc reported the robbery to the police, giving them descriptions of his assailants.

About 10:35 P.M. that night the police brought Bolduc to Massachusetts General Hospital, after being informed that a gunshot victim had been recently admitted. Bolduc and the police officers were misdirected to a patient's room. Bolduc stated that that patient was not one of the robbers. As Bolduc and the police officers were walking away from that man's room, Bolduc spontaneously identified another man lying on a stretcher as one of the robbers. The man, later identified as Richard Cleveland, had a gunshot wound in his foot, and was arrested.[1]

Looking for the person who had brought Cleveland to the hospital, Bolduc went into a waiting room but he came out and told the police that no one looked familiar. The police asked a hospital employee if the person who had brought Cleveland in was still in the hospital. The employee responded by saying "yes" and pointing to the waiting room. Bolduc went into the room for a second look, this time with a police officer accompanying him, and identified the defendant as the other robber. Bolduc stated, however, that he was not one-hundred percent certain of his identification because the defendant was not wearing the same clothes as the robber.

The defendant was arrested and brought outside to a police cruiser. The defendant said to Bolduc: "You have the wrong person." Upon hearing the defendant's voice, Bolduc said: "Now I know I have the right person."

---

[1] Cleveland was not tried with the defendant. The defendant's brief states that Cleveland defaulted on bail and had not been apprehended.

While the police, the defendant and the victim waited outside for a vehicle to transport the defendant, a Boston police detective, Anthony C. Antonuccio, unconnected with the case, came by and identified the defendant as Edward McMaster.

The defendant questions the accuracy of the judge's findings. First, the defendant argues that when the police asked the hospital employee if the person who brought Cleveland to the hospital was still in the waiting room, the employee pointed at McMaster through the open doorway and stated: "There he is, right there." Second, the defendant disputes the sequence of events which occurred while Bolduc, the defendant and the police waited outside the hospital for another police vehicle. According to the defendant, Antonuccio identified the defendant as McMaster and stated that McMaster had a record for armed robbery; Bolduc then said, "Now I know I have the right man." Finally, the defendant says that the police led Bolduc to believe that clothes similar to what the robbers had been wearing were discovered during a search of the defendant's car.

The judge's findings are supported by the evidence and are not clearly erroneous. While the account that the defendant offers is supported by some evidence, the determination of the weight and credibility of the testimony is the function of the judge who saw and heard the witnesses. *Commonwealth* v. *Moon,* 380 Mass. 751, 756 (1980). "Where there has been conflicting testimony as to a particular event or series of events a judge's resolution of such conflicting testimony invariably will be accepted." *Commonwealth* v. *Spagnolo,* 17 Mass. App. Ct. 516, 517-518 (1984).

The defendant did not meet his burden of showing by a preponderance of the evidence that impermissible identification procedures were used. *Commonwealth* v. *Chase,* 372 Mass. 736, 745 (1977). *Commonwealth* v. *Key,* 19 Mass. App. Ct. 234, 239 (1985). Even if we accept the defendant's contention that the identification in the waiting room constituted a one-on-one showup,[2] suppression was not required. "We have repeat-

---

[2] Without this assumption, there is nothing for us to consider. "[A]ccidental encounters between victim and suspect in which the police make no

edly held that due process rights are not violated when police arrange a one-on-one confrontation between the victim and a suspect promptly after a criminal event occurs." *Commonwealth* v. *Harris,* 395 Mass. 296, 299 (1985). *Commonwealth* v. *Coy,* 10 Mass. App. Ct. 367, 371 (1980), and cases cited. Here, the confrontation, occurring within one hour of the crime, and as soon as was possible under the circumstances, was sufficiently prompt. Contrary to the defendant's argument, one-on-one confrontations, although disfavored, need not be justified by exigent or special circumstances. *Commonwealth* v. *Barnett,* 371 Mass. 87, 91-92 (1976). *Commonwealth* v. *Harris, supra* at 299.

Furthermore, there were no special elements of unfairness in the confrontation in the waiting room "as might take the case out of the general class permitting a confrontation without lineup." *Commonwealth* v. *Barnett, supra* at 93. There was no indication of "a desire on the part of the police to 'stack the deck' against the defendant." *Commonwealth* v. *Leaster,* 395 Mass. 96, 103 (1985). Nor was there an indication of "any police desire or intention to deal with [the defendant] unfairly or to do anything but ascertain the perpetrator of [the crime]." *Commonwealth* v. *Bumpus,* 354 Mass. 494, 500 (1968), cert. denied, 393 U.S. 1034 (1969). The defendant's argument that two incidents that occurred *after* the confrontation constituted "special elements of unfairness" is precluded by the judge's findings.

2. *Jury instructions as to identification testimony.* The defendant raises for the first time on appeal the issue whether the judge, in his charge to the jury, erred in omitting portions of the mistaken identification instruction recommended by the Supreme Judicial Court in *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 310-311 (1979).[3] Our review, therefore, is limited

attempt to elicit an identification have been uniformly held not to implicate due process considerations." *Commonwealth* v. *Vasquez,* 11 Mass. App. Ct. 261, 267 (1981), and cases cited.

[3] At trial, the defendant objected only to those portions of the charge in which the judge substituted the word "identity" for the word "identification" which is used in the model charge. After the defendant's objection, the judge gave further instructions which corrected the mistake. There was no further objection. See Mass.R.Crim.P. 24(b), 378 Mass. 895-896 (1979).

to a determination whether there is a "substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). *Commonwealth* v. *Moffett,* 383 Mass. 201, 211 (1981).

"It is well settled that a judge need not grant a particular instruction so long as the charge, as a whole, adequately covers the issue. . . . We are concerned 'with the impressions . . . [the instructions] conveyed to a reasonable juror'" (citations omitted). *Commonwealth* v. *Key,* 19 Mass. App. Ct. 234, 243 (1985), and cases cited. "We consider [the Rodriguez instructions] to be *appropriate* to cases in which identification is in issue. Of course, they may be modified or embellished as the evidence and allegations at trial require." (Emphasis supplied.) *Commonwealth* v. *Rodriguez, supra* at 310 n.1.

The defendant contends that the judge erred in omitting those portions of the *Rodriguez* charge which are set out in the margin.[4] The only omissions which merit discussion in light of the evidence in this case are those set forth in (1), in (2) and in the first sentence of (4). There was testimony from a hospital employee that, immediately prior to Bolduc's identification of the defendant, the employee pointed to the defendant in the waiting room and said: "He's right there" (referring to the person who had brought Cleveland to the hospital). Bolduc

---

[4] (1) "You may take into account both the strength of the identification."

(2) "You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness."

(3) "You may take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial."

The defendant does not specifically point to the omission of the following portion of the *Rodriguez* charge but we consider it under the miscarriage of justice standard.

(4) "If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see the defendant, as a factor bearing on the reliability of the identification."

testified that he was not sure of his hospital identification —
he was "eighty percent" sure — because the defendant was
then wearing clothes different from those worn by the robber.
Bolduc further testified that, when he identified the defendant
at the suppression hearing and at trial, he was not sure that
the defendant was one of the robbers.

The judge began his instructions on identification by inform-
ing the jury that it was the most important issue in the case.
At the outset, he stressed the Commonwealth's burden of show-
ing the accuracy of the identification of the defendant beyond
a reasonable doubt. The judge told the jury: "You should con-
sider whether you are satisfied that the identification was made
by the witness subsequent to the offense and was the product
of his own recollection. You may take into account the cir-
cumstances under which the identification was made." He
stated that the value of identification testimony depends upon
the opportunity of the witness to observe the offender at the
time of the crime so that a reliable identification can be made
later. The judge gave all of the *Rodriguez* charge except those
parts set out in note 4, *supra,* and he closed with the last
paragraph of that charge, emphasizing the Commonwealth's
burden of proof beyond a reasonable doubt as to the identity
of the defendant as the perpetrator of the crimes charged. "The
charge avoided the vice of linking the reliability of the identifi-
cation to the victim's veracity." *Commonwealth* v. *Simmons,*
11 Mass. App. Ct. 156, 162 (1981). The uncertainty of Bol-
duc's pretrial and in-court identifications was made apparent
by his own testimony. In his closing argument, defense counsel
argued at length and forcefully about the weaknesses and dis-
crepancies in Bolduc's testimony. We conclude that there is
not a substantial risk of a miscarriage of justice. See *Common-
wealth* v. *Moffett,* 383 Mass. 201, 211-212 (1981). See also
*Commonwealth* v. *Napolitano,* 378 Mass. 599, 609-610
(1979); *Commonwealth* v. *Conceicao,* 388 Mass. 255, 265-266
(1983).

3. *Jury instructions on joint venture.* There was evidence
that on August 15, 1981, between 8:15 P.M. and 8:45 P.M., a
tan Ford station wagon with Massachusetts registration 543-EYK

was stolen from a parking lot in Porter Square, Cambridge. Bolduc was held up by the defendant and Cleveland between 9:50 P.M. and 9:55 P.M. that same night. He saw the two men leave the gas station in a tan Ford station wagon. The defendant was in the front passenger seat and Cleveland was the driver. About fifteen minutes later, the police found the stolen wagon parked on a street two blocks away from the gas station. The station wagon was unlocked, the hood was warm, and the ignition was damaged. There was a pool of blood on the floor mat on the driver's side. A thumbprint, lifted from the inside of the front passenger seat window, was identified as the defendant's. There was no direct evidence as to who stole the station wagon.

The judge gave the following instructions on joint venture.

"There is evidence that two men were involved in the commission of the crime of armed robbery, if you find, beyond a reasonable doubt, that such a crime was committed. If you find that the two men were acting in concert for the commission of the crime, then the participation of one made him a principal with the other. The participation of the two men acting in concert, through a common design or plan to commit the crime of armed robbery, made each the agent of the other. And if one of the two men committed a crime in furtherance or in prosecution of the common object and design for which they combined together, the other person might be held equally criminally responsible on the theory that the one that committed the crime to further the common plan that they had, the design they had to commit the crime of armed robbery, he's the agent of the other, and the other may be held responsible for it. I'll give you an example. If three men went into a store and robbed the store owner, and then ran out, and the store owner chased them down the street, and one of the men turned and threw a bottle at the store owner and severely injured him, the other two, although they had not thrown the bottle or had a part of it, would be equally responsible criminally, because this was done in further-

ance and in the prosecution of their original crime, the armed robbery of the store owner.

"When two or more are jointly involved in the commission of a crime, each is criminally liable, and the act of one is the act of all. And if one of the two commits another crime which would be in furtherance or in prosecution of the original crime, each would be criminally liable, although one had no part in the commission of the second crime. The two men, acting in concert, commit one crime, but one of the men commit another crime which is in furtherance or in prosecution of their original object, both men are criminally liable for the second crime.

"The larceny of the automobile, in the absence of evidence that the defendant in this case participated in its theft, would require knowledge on his part of the fact that the car was a stolen car when he was riding in it. And he would have to share the intent of the thief, whoever he was, to permanently deprive the owner of its possession. And such an intent may be inferred from all the facts. One who takes property without the authority of the owner, and so uses or disposes of it as to show indifference whether the owner recovers possession, may be found to intend or deprive the owner of it permanently, provided, of course, that all these facts are found beyond a reasonable doubt."

The defendant objected to the instructions on the grounds that (1) they failed to explain the necessity of a common design prior to the larceny of the station wagon, and (2) they suggested that the defendant could be convicted of larceny on evidence that he knew the vehicle had been stolen when he was riding in it. The judge then instructed the jury as follows.

"And when I spoke to you about two persons being engaged in the commission of a crime, as a result of a common design or purpose, I did not tell you that this must involve an agreement to commit the crime which

may be made — which must be made sometime before the crime is committed. It may be an express or implied agreement. The agreement may be made seconds or days before the crime is committed, but it must be made in advance of the actual commission of the crime. If two people, say, were going to commit a crime, they must agree either expressly or impliedly to commit the crime together, and this must be sometime before the commission of the crime, whether it is seconds, minutes, hours, or days — it's not material. But it must be prior to the commission of the crime. Thank you."

There was no further objection. On appeal, the defendant argues that the instructions misstated the elements of criminal joint venture. We review the instructions as a whole to determine whether there is a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Griffin,* 19 Mass. App. Ct. 174, 180 (1985).

We think that the judge's instructions clearly conveyed to the jury that if the defendant and another were jointly involved in the armed robbery, the defendant could be found guilty of larceny of the station wagon regardless of his participation or intent with respect to that crime. See *Commonwealth* v. *Pope,* 15 Mass. App. Ct. 505, 509 (1983), and cases cited. Such a "broad conception of criminal complicity" is fundamentally wrong. *Commonwealth* v. *Richards,* 363 Mass. 299, 306 (1973). What was said in *Richards* is apt. The instructions given here "suggest[ ] [the proposition] that when a number of persons join in a criminal enterprise (here the commission of armed robbery), then each person should be held responsible for any crime committed by any of his partners which follows [or precedes] naturally and probably from the carrying out of the enterprise. It would not matter that that crime was predicated on an intent . . . that was not shared between the actual perpetrator and the others. In urging this broad conception of criminal complicity, the Commonwealth makes an argument analogous to that once made to support the proposition that a person who is guilty of the crime of conspiracy should be ipso facto also

guilty of substantive offenses committed by any of the other conspirators in furthering the conspiratorial undertaking. That argument has been firmly rejected in the Commonwealth. 'One is punished for his own blameworthy conduct, not that of others.'" *Ibid.*, quoting from *Commonwealth* v. *Stasiun,* 349 Mass. 38, 48 (1965).

The example given by the judge, involving criminal responsibility of one defendant for an assault by another defendant following a robbery, exacerbated the error and could only have led to greater misunderstanding by the jury. See *Commonwealth* v. *Benders,* 361 Mass. 704, 707-708 (1972). The Commonwealth argues that any misconception by the jury was clarified by the judge's statement that the defendant would have had to share the intent of the "thief" permanently to deprive the owner of the station wagon. That instruction went to only one element of the crime of larceny. Likewise, the judge's supplementary instruction as to the necessity of an agreement, explicit or implicit, to commit "the crime" did not cure the error. Nowhere in this instruction is the crime of larceny mentioned, and, in the context of the main charge, the jury could only have understood the reference to agreement to mean an agreement to commit an armed robbery.

On the evidence presented, the jury could have found that the defendant was in possession of the stolen station wagon, see *Commonwealth* v. *Subilosky,* 352 Mass. 153, 166 (1967); *Commonwealth* v. *Johnson,* 7 Mass. App. Ct. 191, 193 (1979), and inferred that he was the thief.[5] See *Commonwealth* v. *Porter,* 15 Mass. App. Ct. 331, 333 (1983). Such an inference was not compelled, however, see *Commonwealth* v. *Hughes,* 380 Mass. 596, 602-603 (1980), and was one of several permissible inferences of criminal activity. See *Commonwealth* v. *Porter, supra.* The jury were instructed on the larceny indict-

---

[5] This evidence, taken together with the evidence of the manner in which the station wagon was abandoned, see *Commonwealth* v. *Salerno,* 356 Mass. 642, 648 (1970); *Commonwealth* v. *Mahnke,* 13 Mass. App. Ct. 1057, 1058 (1982), was sufficient to withstand the defendant's motion for a required finding of not guilty on the larceny charge. There was no error in the denial of that motion made at the close of the Commonwealth's case.

ment only on a theory of joint venture. We assume the jury followed the instructions. See *Commonwealth* v. *Hennessey*, 17 Mass. App. Ct. 160, 165 n.4 (1983), and cases cited. Assuming, without deciding, that the jury could have found the defendant guilty of larceny on a proper theory of joint venture (the adverse permissible inferences against the defendant and Cleveland were the same and, therefore, shared intent could be found), a theory which would appear unnecessary for conviction on the facts of this case, we think the jury could also have found the defendant guilty of larceny solely on the basis of their finding of his participation in the armed robbery. We conclude that the faulty instructions created a substantial risk of a miscarriage of justice.

We decline, for the reasons already stated, to remand for sentencing on the offense of use of a motor vehicle without authority. See G. L. c. 90, § 24(2)(*a*); *Costarelli* v. *Commonwealth,* 374 Mass. 677, 683-684 (1978). The evidence at any retrial on the larceny charge will dictate the need for any charge on a lesser included offense.

4. *A remark of the trial judge.* During cross-examination of Bolduc, defendant's counsel asked: "You have testified previously, have you not, . . . that it [the robber identified as the defendant] could have been somebody else?." The judge interjected: "Of course it could be somebody else, it could be a double, could be a twin." Defense counsel objected. In answer to the next two questions Bolduc said he was not currently sure of his identification, nor was he one-hundred percent sure in August of 1981.

The defendant argues that the judge's remarks indicated to the jury that he believed that the defendant was the robber and that there was no possibility of mistaken identification. There was no error.

The judge's remarks came after a line of questioning by defense counsel in which Bolduc admitted to the uncertainty of his identification at trial and at the suppression hearing. Immediately before the question which evoked the judge's remarks, defense counsel had asked three consecutive questions with respect to the certainty of Bolduc's current identification.

The judge had sustained the prosecutor's objection to the third question. Notwithstanding the unfortunate choice of expression, the transcript shows that the judge's comments were made in an attempt to curtail unnecessarily repetitive cross-examination. Such action was a proper exercise of discretion. See *Commonwealth* v. *Haley,* 363 Mass. 513, 518 (1973). While the judge's comments "could have been more happily phrased, we do not think they went beyond permissible limits or displayed bias or a belief in the defendant's guilt." *Commonwealth* v. *Leventhal,* 364 Mass. 718, 724 (1974). Contrast *Commonwealth* v. *Borges,* 2 Mass. App. Ct. 869 (1974). Following his comments, the judge permitted the defendant's counsel to ask several additional questions relating to the uncertainty of Bolduc's identification. In any event, we think that any harm that may have been done was remedied by the judge's instructions to the jury that they were to determine the facts and the credibility of witnesses and that nothing the judge had said was evidence.

5. *Denial of motion for a new trial.* On appeal from the denial by the trial judge of his motion for a new trial, the defendant relies on ineffective assistance of trial counsel. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In order for the defendant to prevail on a claim of ineffective assistance of counsel, he must demonstrate that "there has been serious incompetency, inefficiency or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defense." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). Accord *Commonwealth* v. *Drayton,* 386 Mass. 39, 41 (1982); *Commonwealth* v. *Sielicki,* 391 Mass. 377, 378-379 (1984). See *Strickland* v. *Washington,* 466 U.S. 668 (1984); *Commonwealth* v. *McGann,* 20 Mass. App. Ct. 59, 61-62 (1985). Tactical judgments do not lead to a finding of ineffective assistance of counsel unless they are "manifestly unreasonable." *Commonwealth* v. *Adams,* 374 Mass. 722, 728-729 (1978). *Commonwealth* v. *Drayton, supra* at 41.

The defendant first argues that trial counsel was ineffective because he failed to subpoena a person who allegedly admitted guilt of the crimes for which the defendant was charged. The argument fails for the reason, if no other, that the judge found, on conflicting affidavits and on ample bases, that the defendant insisted that the person not be called as a witness. Moreover, the judge found there was no corroboration of the person's guilt by any of the evidence in the case and that if an admission were made, it was untrustworthy. The defendant chose to defend on theories of misidentification and alibi (the judge obviously believed the affidavit of counsel that he gave contrary advice). The wife of the person the defendant claims admitted guilt was one of the defendant's alibi witnesses. The fact that the defendant, by the trial strategy he dictated to his counsel, might have gambled and lost, see *Commonwealth* v. *Toney,* 385 Mass. 575, 589 (1982), does not permit the defendant now to turn on counsel and claim ineffective assistance. In the circumstances of this case, it surely cannot be said that trial counsel followed a strategy that was "suicidal." See *Commonwealth* v. *Adams, supra* at 730 n.4.[6]

Trial counsel's decisions not to call as witnesses Robert Lewey and Robert Connearney were conscious tactical judgments and were not manifestly unreasonable. Lewey's testimony would have supported the defendant's alibi. One of the four alibi witnesses could and did testify to the same incident that Lewey allegedly observed. Counsel chose not to call Lewey because he could have been impeached by a prior conviction for armed robbery. Counsel also was wary of Lewey's truthfulness, as the defendant had first mentioned Lewey about two months before trial, and counsel had represented the defendant for approximately one year. Connearney would have testified

---

[6] The judge found: "Trial counsel at the defendant's trial was experienced in criminal trial work. He vigorously and ably cross-examined the victim and other witnesses that testified against the defendant. His closing argument was well prepared and forceful." "We give substantial deference to [the trial judge's] evaluation of counsel's representation." *Commonwealth* v. *Gaeten,* 15 Mass. App. Ct. 524, 532-533 (1983). Moreover, our review of the record confirms the judge's conclusions.

that he, the defendant and Bolduc's employer met twice with Bolduc. During those encounters, Bolduc said that he was uncertain of his identification and that a police officer had made suggestive comments about the defendant. Counsel decided not to call Connearney because (1) counsel's cross-examination of Bolduc established the uncertainty of his identification, (2) Connearney's testimony would not weaken Bolduc's testimony but might reinforce it, and (3) emphasis on contacts with Connearney, the defendant, and Bolduc's employer might suggest to the jury attempts to intimidate Bolduc.

The defendant also argues ineffective assistance of counsel at the hearings on the motion to suppress. First, the defendant says that Boston police detective Anthony C. Antonuccio should have been called as a witness in his behalf. According to the defendant, Antonuccio would have testified that he made highly suggestive comments leading to Bolduc's identification of the defendant outside of Massachusetts General Hospital. The short answer to the defendant's argument is that the affidavit of trial counsel shows that his decision not to call Antonuccio was based upon a pre-suppression hearing version of events given by Antonuccio to counsel which was not favorable to the defendant.[7] Finally, the defendant complains of counsel's failure to object to the mention of fingerprint evidence during the suppression hearing. The evidence was mentioned during a colloquy between the judge and the prosecutor as to the strength of the Commonwealth's case. The evidence was not admitted on the motion to suppress.

---

[7] Indeed, Antonuccio's testimony at the hearing on the motion for a new trial was not favorable to the defendant in this respect.

We conclude that there has been no showing of ineffective assistance of counsel and, therefore, that there was no error in the denial of the motion for a new trial.

*Judgment on indictment no. 81-2385 affirmed.*

*Judgment on indictment no. 81-2386 reversed and the verdict set aside.*

*Order denying the motion for a new trial affirmed on indictment no. 81-2385.*