After a jury trial in the Superior Court, the defendant, Santyor Ringador, was convicted of armed robbery.[2] On appeal, he contends that the motion judge, who was also the trial judge, erred in denying his motion to suppress evidence, motion to suppress identification testimony, and motion for a required finding of not guilty. We affirm.
Background. The judge conducted a three-day evidentiary hearing on the two motions to suppress. In a comprehensive memorandum of decision and order, the judge found, inter alia, the following facts:
"On August 29, 2012, shortly after midnight, officers from the Medford Police Department received a dispatch regarding an armed robbery at gunpoint in the vicinity of LaCascias Bakery in South Medford. The victim reported to police in a 9-1-1 call that [he] had been robbed ten minutes earlier by a skinny black kid with a gun who was wearing a blue doo rag. He reported in that call that two other persons ... also participated in the robbery. The three threatened to kill the victim if he did not run home. He did not see where the three went as he ran home as instructed.
"On his way to speak with the victim, Officer Guy Champa passed a group of four or five black males sitting on a wall and standing in the area of LaCascias Bakery and requested other officers to check out that group of males.... Officer James Benoit, whose testimony I found credible, was the first to arrive. He stated to the group that a robbery had just occurred and that he would like the men to stay put, which they did. Among those males were the defendants. The defendant Ringador was wearing a white tee shirt and black doo rag. Officer Benoit and other officers kept the group of males under observation, with Officer Benoit focused exclusively on Mr. Ringador.... There was no testimony that I credit regarding actual pat-frisking of the group. I accept Officer Benoit's testimony that he did not do anything at the scene to determine whether any of the young men had a firearm. Given Officer Benoit's focus on Mr. Ringador during the encounter, I find that Mr. Ringador was not pat-frisked. There was no evidence that [the codefendant] was pat-frisked. I find that the young men were not handcuffed before or during the show-up done by Officer Champa.
"While the defendants were cooperative with the officers, Officer Benoit observed the defendant Ringador begin to move off to the side of the group and believed that he might try to flee. Given that belief, Officer Benoit kept Mr. Ringador within sight at all times during the encounter. When Mr. Ringador moved, Officer Benoit moved along with him. Mr. Ringador's movements were not constrained by Officer Benoit, who simply followed and observed Mr. Ringador. Officer Benoit saw the defendant Ringador remove batteries from a cell phone and then stuff the cellphone into a gap between the wall and the grass. Officer Benoit also observed Mr. Ringador stuff a wallet and some credit cards into the same gap between the wall and the grass.
"Officer Champa met with the victim who appeared distraught and terrified. In the interview at the victim's apartment, the victim told Officer Champa that he had been robbed of his wallet and a cellphone. He informed Officer Champa that the person with the gun was wearing a blue doo rag and a white tee shirt. The victim, who had been in the military, reported that the gun used was a 9 mm. Berretta 92F, military model. ...
"Officer Champa informed the victim that there were some people who were being detained in the vicinity of the robbery and that it was very possible that one of them was a suspect, and asked him if he would go to that scene to see if he recognized anyone. He utilized a Show-Up Identification Form[3 ]... with the victim before the show-up was conducted. ... The area was well-lit with street lights and lights from the officers' cruisers. The victim looked at the group and identified the defendant Ringador as the person with the gun. He stated to Officer Champa 'Officer, that's him, that's the one covering his face, in the white T-shirt. Yes it's definitely him.' Mr. Ringador was placed under arrest by Officer Benoit, who retrieved the cellphone, wallet, and credit cards from between the wall and the grass and transported him to the police station."[4 ]
The judge denied the motion to suppress evidence, ruling that in view of the attendant circumstances, including the defendant's proximity to the crime scene, time of night, nature of the offense, "and the fact that the stop occurred almost immediately after the crime was committed," the officers were "justified in temporarily detaining the defendant[ ] until the victim arrived to see if he could identify [him]." The judge also denied the motion to suppress identification testimony because the showup was not unnecessarily suggestive.
Discussion. 1. Motion to suppress evidence. "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error. The weight and credibility to be given oral testimony is for the judge.[5 ] However, we review independently the motion judge's application of constitutional principles to the facts found." Commonwealth v. Franklin, 456 Mass. 818, 820 (2010) (citations omitted).
The defendant contends that the motion to suppress evidence should have been allowed because he "was seized in the absence of reasonable suspicion and pat frisked without probable cause." We disagree. The record reflects that within minutes of the victim's 911 call, Officer Champa saw a small group of people, including the defendant, in close proximity to the location of the armed robbery. He alerted other officers, and less than a minute later, Officer Benoit arrived at the scene, advised the group that an armed robbery had just occurred, and asked them to stay put. Officer Benoit neither pat frisked, handcuffed, nor restrained the defendant's movements. The record supports this finding. Based on the defendant's proximity to the crime scene, the proximity in time to the armed robbery and the 911 call, the use of a firearm in the robbery, and the time of night, Officer Benoit's actions were reasonable and "proportional to the degree of suspicion that prompted the intrusion." Commonwealth v. Haskell, 438 Mass. 790, 794 (2003), quoting from Commonwealth v. Moses, 408 Mass. 136, 141 (1990). In addition, Officer Benoit saw the defendant wearing a "doo rag," and was aware from the radio dispatch that the robber with the gun was described as a "thin black male wearing a du-rag on his head." See Commonwealth v. Ancrum, 65 Mass. App. Ct. 647, 652 (2006). In view of the totality of information known to the officers engaged in a cooperative investigation, Commonwealth v. Mendes, 46 Mass. App. Ct. 581, 589 (1999), the police had at least reasonable suspicion to conduct a threshold inquiry.[6] See Cypher, Criminal Practice and Procedure § 4:19, at 203 (2014) ("When reviewing a stop or frisk, the court may take into account the collective knowledge of other officers").
Contrary to the defendant's contention, the arrival and presence of additional officers and cruisers to the scene did not constitute a disproportionate show of force converting the encounter into an arrest or unconstitutional seizure. The officers were responding to an armed robbery that had just occurred at or near that very location. "Particularly when a police officer receives information concerning an individual with a gun, the 'test for determining reasonable suspicion should include consideration of the possibility of the possession of a gun, and the government's need for prompt investigation.' " Commonwealth v. Stoute, 422 Mass. 782, 791 (1996), quoting from United States v. Bold, 19 F.3d 99, 104 (2d Cir. 1994). See Commonwealth v. Doocey, 56 Mass. App. Ct. 550, 557 & n.12 (2002) ; Ancrum, supra at 654. In view of the information known to the officers, the detention was reasonably limited and proportional to the degree of suspicion that prompted the intrusion. See generally Commonwealth v. Moses, 408 Mass. 136, 140-144 (1990).
Finally, the encounter was relatively brief, as only twenty minutes passed between Officer Benoit's arrival at the scene and Officer Champa's return to the scene with the victim. During that twenty minutes, Officer Benoit observed the defendant "begin to move off to the side of the group[,] ... remove batteries from a cell phone and then stuff the cellphone into a gap between the wall and the grass ... [and] stuff a wallet and some credit cards into the same gap between the wall and the grass." These observations added to the officers' suspicion, and reinforced the reasonableness of Officer Benoit's actions.[7] See generally Commonwealth v. Ciaramitaro, 51 Mass. App. Ct. 638, 642 (2001) (observations made and events occurring during stop may lead to heightened suspicion justifying further inquiry). Accordingly, the judge did not err in denying the motion to suppress evidence.
2. Motion to suppress identification. The judge properly denied the motion to suppress the showup identification process. Although one-on-one identifications are generally disfavored, "due process rights are not violated when police arrange a one-on-one confrontation between the victim and a suspect promptly after a criminal event occurs," Commonwealth v. Harris, 395 Mass. 296, 299 (1985), unless it is determined to be unnecessarily suggestive. See Commonwealth v. Martin, 447 Mass. 274, 279 (2006). Whether an identification procedure is unnecessarily or impermissibly suggestive "involves inquiry whether good reason exists for the police to use a one-on-one identification procedure." Ibid. (quotation omitted). "Exigent or special circumstances are not a prerequisite to such confrontations." Harris, supra. Here, the identification occurred less than one hour after the armed robbery. The police used a showup identification form, which cautioned the victim, inter alia, that the person "may or may not be the person who committed the crime, so you should not feel compelled to make an identification ... [and that i]t is just as important to clear innocent people as it is to identify possible perpetrators." Moreover, the area was well lit, and the victim identified the defendant from among a group of people at the scene. Given these facts, the defendant has not met his burden of showing "by a preponderance of the evidence that the showup was so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny [him] due process of law."Martin, supra at 280 (quotation omitted).[8] See Commonwealth v. Bowden, 379 Mass. 472, 479 (1980), quoting from Commonwealth v. Barnett, 371 Mass. 87, 92 (1976), cert. denied, 429 U.S. 1049 (1977) ("[S]howups of suspects to eyewitnesses of crimes have been regularly held permissible when conducted by the police promptly after the criminal event"). There was no error.[9]
Judgment affirmed.

The defendant was tried with a codefendant who was also convicted of armed robbery. The jury found both defendants not guilty of intimidation of a witness.

A copy of the "Show-Up Identification Form," signed by Officer Champa and the victim, was marked as an exhibit and entered in evidence at the motion to suppress hearing.

At the police station, the victim identified the property found at the scene "as belonging to him."

We note that the judge explicitly found Officer Benoit's testimony to be credible. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015), quoting from Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007) ("[A]n appellate court may supplement a motion judge's subsidiary findings with evidence from the record that 'is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony' ").

The defendant does not contend in his brief that the judge's findings of fact were clearly erroneous. At oral argument, however, he claimed, contrary to the judge's findings, that the defendant was pat frisked. We disagree, as there is ample evidence in the record supporting the judge's factual determinations. To the extent that evidence presented at the motion hearing conflicted, the judge was entitled to make credibility assessments, weigh that evidence, and resolve the differences. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 433 (2015). Furthermore, even assuming that the officers pat frisked the defendant, and even if they detained the defendant while waiting for the showup, this was within the scope of a Terry v. Ohio, 392 U.S. 1 (1968), stop justified by reasonable suspicion, and did not rise to the level of an arrest. See generally Commonwealth v. Fraser, 410 Mass. 541, 544-545 (1991).

Officer Benoit was the sole officer at the scene at the time that the defendant first began to move to the side of the group.

Officer Champa's statement to the victim that "it was very possible" that one of the persons being detained was a suspect, made prior to their arrival at the scene, did not elevate the showup to an unnecessarily suggestive encounter. See Commonwealth v. Williams, 399 Mass. 60, 67 (1987).

Since we hold that the judge properly denied the motions to suppress, there is no merit to the defendant's claim that the judge erred in denying his motion for a required finding of not guilty.