After a jury trial, the defendant was convicted of assault and battery on a family or household member and assault with a dangerous weapon. On appeal he argues that the judge erred in denying two pretrial motions: one to admit third-party culprit evidence showing that the victim's then boyfriend, who was present at the scene of the incident, had a pattern of violence against women, and another to admit evidence that the victim previously texted nude photographs to the defendant. We affirm.
Background. The defendant and the victim have a romantic history. The status of their relationship at the time of the incident was contested, however. The victim testified that they were just friends; the defense's theory was that they were still dating.
On the day of the incident, the defendant visited the victim at her workplace, as he sometimes did. When the defendant arrived, the victim was in the parking lot with her boyfriend. She approached the defendant and asked him to leave, but the defendant refused. An argument ensued, during which the defendant grabbed the victim, threw her into his car, held her down by the face, and screamed at her. The victim heard her boyfriend scream "get off of her."
Eventually, the defendant released the victim, returned to his car, and backed up at a high rate of speed. The victim thought he had left the area, but then heard her boyfriend yelling to get out of the way. The victim turned and saw the defendant driving toward her, missing her by inches. Afterward, the victim spoke to the police and identified the defendant as her assailant.
Discussion. 1. Third-party culprit evidence. The defendant sought to introduce evidence to show that, despite the victim's identification, her boyfriend was actually the one who committed the crimes. Specifically, the defendant sought to introduce evidence that (1) in 2016 the boyfriend grabbed his then girlfriend by the neck and threw her to the ground after discovering her messages to other men, (2) in 2008 he pushed, hit, and threw a compact disc case at a different girlfriend following an argument, and (3) in 2005 he slammed a woman repeatedly against a car and held her down.
Generally, "[a] defendant may introduce evidence that tends to show that another person committed the crime or had the motive, intent, and opportunity to commit it." Commonwealth v. Harris, 395 Mass. 296, 300 (1985). That evidence, however, must be "so closely connected in point of time and method of operation as to cast doubt upon the identification of [the] defendant as the person who committed the crime." Id., quoting Commonwealth v. Keizer, 377 Mass. 264, 267 (1979). The evidence must also have "a rational tendency to prove the issue the defense raises, and ... cannot be too remote or speculative." Commonwealth v. Watkins, 473 Mass. 222, 234 (2015), quoting Commonwealth v. Smith, 461 Mass. 438, 445-446 (2012). "[I]t is admissible, in the judge's discretion, only if it is otherwise relevant and will not tend to prejudice or confuse the jury, and if there are 'other substantial connecting links' between the proffered third-party culprit and the crime." Watkins, 473 Mass. at 234, quoting Smith, 461 Mass. at 445.[2]
Here, we conclude that the proffered evidence was too remote and speculative to rationally tend to prove the defendant's theory that the victim falsely accused him to protect her boyfriend. The victim herself reported the crimes to the police, and identified the defendant as the perpetrator, immediately after the crimes occurred. There is little support in the evidence or in logic that the victim would have reported the crimes, and concocted a story about the defendant, had the boyfriend been the real perpetrator; she could have protected the boyfriend simply by remaining silent. And though the defendant argues that the boyfriend had a motive to attack the victim (jealousy), and that the prior incidents show the boyfriend's "history of jealousy issues," the link between this alleged motive and the proffered evidence is too attenuated for the evidence to be admissible. There is no indication that the 2005 and 2008 incidents involved jealousy on the part of the boyfriend. Moreover, the defendant made no offer of proof (and no evidence was put forth at trial) that the boyfriend was jealous of the relationship between the victim and the defendant. Without such evidence, any connection between the boyfriend's purported jealousy issues and his motive to assault the victim is purely speculative. See Watkins, 473 Mass. at 234-235 ("evidence that [third party] might have had a motive to kill the victim on the date that the victim died was overly speculative and of little probative value, and would tend to prejudice and confuse the jury"); Smith, 461 Mass. at 447-448, quoting Commonwealth v. Silva-Santiago, 453 Mass. 782, 801 (2009) (given its "speculative" nature, proffered "evidence did not provide 'a rational tendency to prove the issue the defense raises,' i.e., that the unknown individuals, and not the defendant, committed the crimes").
Additionally, the prior incidents are not "so closely connected in point of time and method of operation as to cast doubt upon" the veracity of the victim's identification of the defendant. Harris, 395 Mass. at 300. The 2005 and 2008 incidents are far removed in time, and none of the incidents are "closely connected in ... method of operation." Id. Any "points of similarity" between the prior incidents and the crimes "are not particularly distinguishing or unique." Id. at 301. See Commonwealth v. Hunter, 426 Mass. 715, 717 (1998), quoting Harris, 395 Mass. at 301 ("the shared act must be 'particularly distinguishing,' rather than commonplace or ordinary"). At most, the proffered evidence would have shown the boyfriend's propensity to be violent towards women, which is of minimal probative value and would tend to prejudice and confuse the jury. See Smith, 461 Mass. at 447.
2. Photographs. The defendant also sought to introduce evidence of the victim's "[p]rior [a]cts" of "sexual conduct with the defendant," arguing that this evidence would show the victim's bias and her motive to falsely identify the defendant as her attacker. At trial the defendant clarified that he was seeking to cross-examine the victim about nude photographs of herself that she had texted to the defendant.[3] The judge denied the motion on the ground that the relevance of the photographs was "way overbalanced" by the risk of unfair prejudice and jury confusion.
While the defendant had the right to cross-examine the victim to probe her potential bias, he had to first "make a plausible showing that the circumstances existed on which the alleged bias is based." Commonwealth v. Tam Bui, 419 Mass. 392, 401, cert. denied, 516 U.S. 861 (1995). It is in the judge's sound discretion to determine "[t]he scope of cross-examination, including to what extent the accuracy, veracity, and credibility of a witness may be tested." Commonwealth v. Gagnon, 408 Mass. 185, 192 (1990), quoting Commonwealth v. Underwood, 358 Mass. 506, 513 (1970). We will not overturn the judge's decision unless the defendant can show "prejudice ... by reason of too narrow restriction." Id. See Commonwealth v. Miles, 420 Mass. 67, 73-74 (1995).
We discern no abuse of discretion or prejudice. The defendant argued that the photographs were relevant to show that the victim and the defendant were more than "just friends," but he failed to explain why that would make the victim biased against him or motivate her to accuse him of a crime he did not commit.[4] Whatever attenuated connection there was between the photographs and the victim's purported bias, the judge reasonably found that the relevance was outweighed by the potential that the evidence would "slander" the victim and confuse the jury. See Tam Bui, 419 Mass. at 401 ("The defendant's bias theory was too tenuous to be one that he was entitled to pursue on the record he presented").
Furthermore, the judge allowed cross-examination on many other text messages that the victim sent to the defendant, including one that said it was her "dream" to get an engagement ring from him, but he had to first file for divorce from his wife. The jury thus heard that the relationship was of such a nature that the victim wanted to marry the defendant.[5] In light of this testimony, we are satisfied that additional cross-examination about the photographs would have been cumulative and therefore that the judge's restriction "was without effect on the jury and did not contribute to the verdict." Miles, 420 Mass. at 74, quoting Commonwealth v. Sinnott, 399 Mass. 863, 872 (1987).
Judgments affirmed.

The parties agree that we "examine the issue independently" because the issue is of constitutional dimension. Commonwealth v. Conkey, 443 Mass. 60, 67 (2004). But see Watkins, 473 Mass. at 234-235 (reviewing exclusion of third-party culprit evidence for abuse of discretion); Harris, 395 Mass. at 300-301 (same). We will assume without deciding that the parties' statement of the standard of review is correct.

The defendant also clarified that he was not trying to admit the photographs themselves.

On appeal the defendant surmises that the photographs showed that the victim could have been trying to cover for her boyfriend, but he made no offer of proof, nor was any evidence offered at trial, to substantiate this allegation. In fact, the victim suggested at trial that she was no longer dating the boyfriend, characterizing him as "the kid I was dating at the time."

As another notable example, the jury heard that the victim texted the defendant, "I LOVE YOU," with three "kissy emoji[ ]"; the defendant replied "love you more"; and the victim then sent an "emoji of ... two people with [a] heart ... above their heads" and an "emoji of ... [a] diamond ring."