## COMMONWEALTH *vs.* VINCENT PERITO.

Plymouth. January 5, 1994. - May 5, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Bail. District Court*, Arraignment. *Practice, Criminal*, Dismissal, Arraignment, Delay in commencement of prosecution, Preservation of evidence, Loss of evidence by prosecution. *Due Process of Law*, Delay in commencement of prosecution, Loss of evidence by prosecution. *Evidence*, Admissions and confessions, Exculpatory, Relevancy and materiality.

In a criminal proceeding, the defendant's right under G. L. c. 276, § 58, to participate in his bail hearing was violated when a District Court judge ordered bail set while the defendant, who was not represented by counsel, was in a hospital [677-679], and the defendant's right to a prompt initial appearance before the court under that statute and Mass. R. Crim. P. 7 (a) (1) was violated by an unreasonable delay (thirty-four days) before he was arraigned [679-681]; however, dismissal of the indictments and suppression of booking photographs and fingerprints were not appropriate remedies where the defendant showed no prejudice or intentional violation of his rights [681-683].

In a criminal case in which the Commonwealth failed to preserve a security camera videotape of the commission of the armed robbery in question because of the tape's poor quality, the judge correctly denied the defendant's motion to dismiss the indictment where she found that, in the circumstances, the police were without culpability for the loss, the videotape's materiality was minimal, and the prejudice to the defendant was marginal. [683-684]

At the trial of indictments for armed robbery, the judge properly excluded evidence of other armed robberies offered to implicate another person than the defendant as the perpetrator of the crimes charged, where the judge properly determined that the proffered evidence was irrelevant. [684-686]

COMPLAINT received and sworn to in the Wareham Division of the District Court Department on February 21, 1989.

A bail hearing was held by *Roger B. Champagne*, J.

INDICTMENTS found and returned in the Superior Court Department, two on May 1, 1989, one on February 16, 1990, and one on June 5, 1990, respectively.

A pretrial motion to suppress evidence was heard by *William H. Carey*, J.; pretrial motions to dismiss and for production of complete files were heard by *Suzanne DelVecchio*, J.; and the cases were tried before *Cortland A. Mathers*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William M. Leonard* for the defendant.

*Nancy D. Adams*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant appeals from four armed robbery convictions. He claims error in (1) the denial of his pretrial motion to dismiss the robbery indictments or to suppress photograph and fingerprint evidence as a remedy for an allegedly illegal detention; (2) the denial of his pretrial motion to dismiss one of the robbery indictments as a remedy for the Commonwealth's failure to preserve potentially exculpatory evidence; and (3) the exclusion at trial of evidence of other armed robberies. We transferred the case to this court on our own initiative to consider whether a District Court judge may set bail in a defendant's absence and order him committed to a house of correction pending a postponed arraignment when medical necessity precludes his immediate appearance in court. We conclude that the defendant's right to participate in his bail hearing and his right to a prompt initial court appearance were violated by such a practice. See G. L. c. 276, § 58 (1992 ed.); Mass. R. Crim. P. 7 (a) (1), as amended, 397 Mass. 1226 (1986). However, we also conclude that there is no basis in this case for the relief the defendant requests. We find no merit in the defendant's other two allegations of error. Accordingly, we affirm the convictions.

We first consider whether there was an illegal detention which required dismissal of the robbery indictments or suppression of photograph and fingerprint evidence. The motion judge found the following facts.

At approximately 11 A.M. on Tuesday, February 21, 1989, following an automobile chase which terminated when the defendant's vehicle struck a guard rail, the defendant was arrested for receiving a stolen motor vehicle, receiving a stolen credit card, driving to endanger, and failing to stop for a police officer. The defendant was not at that time a suspect in any armed robbery investigation. The injured defendant was taken to a hospital, and bail in the amount of $2,500,000 surety or $250,000 cash was set later that day by a judge at the Wareham District Court while the defendant, who was unrepresented at the bail hearing, was in the hospital. The defendant's case was continued until March 3, and the judge issued a mittimus ordering that the defendant be committed to the Plymouth County house of correction pending his postponed appearance.

At approximately noon the following day, February 22, the sheriff's department transported the defendant from the hospital to the house of correction where he was fingerprinted and photographed pursuant to the facility's standard admissions procedure. Later that day, the staff psychologist at the house of correction examined the defendant, found the defendant to be suicidal, and recommended that he be committed to Bridgewater State Hospital. The following morning, after he set fire to his own cell, the defendant was examined by a second doctor who concurred in the first doctor's recommendation and filed a request for commitment with the court. Pursuant to G. L. c. 123, § 18 (*a*), a District Court judge adopted the recommendation and ordered that the defendant be committed to Bridgewater for a period of observation not to exceed thirty days.

The defendant was first brought to court on March 27, after being released from Bridgewater, and was arraigned at that time on the charges arising out of the February 21 incident. The defendant was also arraigned, following his release from Bridgewater, on charges for various armed robberies to which the police had connected him using the photographs and fingerprints taken at the house of correction. The

charges arising out of the February 21 incident were subsequently dismissed.

The defendant contends that his detention from February 21 to March 27 was illegal because bail was set in his absence and because he was not brought to court for an initial appearance. In response, the Commonwealth argues that the delay in bringing the defendant to court was reasonable in the totality of the circumstances, and therefore lawful, since the defendant's own behavior in attempting to flee the arresting officer caused his hospitalization and therefore his absence from court when bail was set. According to the Commonwealth, whenever a defendant is unable to be present at arraignment for medical reasons, the standard practice in the Wareham District Court is to set bail in his absence and continue the case ten days. The delay beyond ten days in this case was reasonable, says the Commonwealth, because of the subsequent necessity of committing the defendant to Bridgewater for observation.

We agree with the defendant that the practice followed by the District Court judge violated the defendant's right to participate in his bail hearing and his right to a prompt initial court appearance, and that, consequently, the defendant was illegally detained. However, for the reasons stated below, there is no basis for dismissing the indictments or suppressing the photographic and fingerprint evidence.

The Massachusetts bail statute, G. L. c. 276, § 58 (1992 ed.), reads in pertinent part:

> "A justice or a clerk or assistant clerk of the district court, a bail commissioner or master in chancery . . . shall . . . hold a hearing *in which the defendant and his counsel, if any, may participate* and inquire into the case and shall admit such person to bail on his personal recognizance without surety unless said justice, clerk or assistant clerk, bail commissioner or master in chancery determines . . . that such a release will not reasonably

assure the appearance of the prisoner before the court" (emphasis added).[1]

As we have previously stated, "[o]ur Legislature intended § 58 to protect the rights of [a] defendant by establishing a presumption that he or she will be admitted to bail on personal recognizance without surety and by delineating carefully the circumstances under which bail may be denied." *Delaney* v. *Commonwealth*, 415 Mass. 490, 495 (1993). This presumption, like the preference expressed in Mass. R. Crim. P. 6 (a), 378 Mass. 852 (1979), for issuing a summons instead of an arrest warrant, "is bottomed on the belief that defendants should be burdened with the fewest restrictions on their pretrial liberty that will adequately assure their presence at trial." Reporters' Notes to the Mass. R. Crim. P. 6, Mass. Ann. Laws, Rules of Criminal Procedure at 94 (Law. Coop. 1979).

Section 58 explicitly grants a defendant and his counsel, if any, the right to participate in his bail hearing. This participation is crucial, in light of the Commonwealth's policy of limiting pretrial restrictions on liberty, because it provides a bail official with an opportunity to question the defendant "in order to establish a sufficient basis for a determination of the appropriate conditions of his release." Reporters' Notes to Mass. R. Crim. P. 6, *supra.* In the instant case, the defendant's right to participate in his bail hearing was violated since bail was set without his participation.

As the Commonwealth observes, a defendant may be admitted to bail out of court. "A bail commissioner performs duties which are identical to those performed by judges and clerk-magistrates in passing on prisoners' applications to be admitted to bail. A bail commissioner, however, does not normally perform services in a courthouse or during normal court hours but rather holds a bail hearing in a police station or other place of detention where a person is being held

---

[1]Section 58 was amended by St. 1992, c. 201. Certain portions of these amendments were declared unconstitutional under the Federal Constitution in *Aime* v. *Commonwealth*, 414 Mass. 667 (1993).

under arrest at night or on weekends or holidays." (Footnote omitted.) *Quinn* v. *State Ethics Comm'n*, 401 Mass. 210, 212 (1987). Contrary to the Commonwealth's suggestion, however, the present situation is not analogous to the alternative procedures, which are used when the court is closed, to set bail until the defendant can be brought before a judge. A defendant would be present at an out-of-court bail hearing and therefore able to participate. General Laws c. 276, § 61 (1992 ed.), provides that "[a] person authorized to take bail [out of court] shall take such bail in the presence of the person to be bailed."

In addition to granting a defendant the right to participate in his bail hearing, § 58 directs that a defendant who has not been "released on his personal recognizance without surety [through an out of court bail hearing] shall forthwith be brought before the next session of the district court for a review of the order to recognize in accordance with the standards set forth in [§ 58]." Similarly, Mass. R. Crim. P. 7 (a) (1), as amended, 397 Mass. 1226 (1986), reads, in pertinent part:

> "A defendant who has been arrested shall be brought before a court if then in session, and if not, at its next session. . . . At that time the defendant shall be interviewed by the probation department; the probation department shall make a report to the court of the pertinent information reasonably necessary to determination of the issues of bail and indigency. If the judge or special magistrate finds that the defendant is indigent or indigent but able to contribute and has not knowingly waived his right to counsel under the procedures established in Supreme Judicial Court Rule 3:10, the Committee for Public Counsel Services shall be assigned to provide representation for the defendant. The judge or special magistrate shall then arraign the defendant or shall set a time for arraignment. The judge or special magistrate shall determine the conditions of the defendant's release, if any."

Thus, rule 7 (a) (1) and c. 276, § 58, require a defendant, who has not previously been released from custody, to be brought to court for an initial appearance at the first available opportunity. As indicated by rule 7 (a) (1), this initial appearance affords a defendant the opportunity to have bail set by the court, to have counsel appointed, and to be arraigned or to have a date set for arraignment. The purpose of such a "rule requiring the defendant's prompt appearance in court [is to] prevent[ ] unlawful detention and eliminate[ ] the opportunity and incentive for application of improper police pressure." *Commonwealth* v. *Cote*, 386 Mass. 354, 361 n.11 (1982). We evaluate the lawfulness of any delay in bringing a defendant to court for his initial appearance by considering the reasonableness of the delay in light of the circumstances. See *Commonwealth* v. *Hodgkins*, 401 Mass. 871, 876-877 (1988); *Commonwealth* v. *Dubois*, 353 Mass. 223, 226 (1967); *Commonwealth* v. *Banuchi*, 335 Mass. 649, 656-657 (1957). Cf. *Jenkins* v. *Chief Justice of the Dist. Court Dep't*, 416 Mass. 221, 232-239 (1993) (a warrantless arrest must be followed by a judicial determination of probable cause, which may be made at an ex parte hearing, no more than twenty-four hours after the arrest unless the Commonwealth demonstrates extraordinary circumstances causing the delay).

The practice followed by the District Court judge in the instant case violated the defendant's right to a prompt initial appearance since he was not brought before a court as soon as was reasonably possible. While we agree with the Commonwealth that it is certainly reasonable not to bring a defendant to court while he is receiving medical treatment, this does not diminish the need to provide a defendant injured during his arrest with an initial appearance as soon as it becomes reasonably possible to do so. The defendant in this case was released from the hospital on a weekday at approximately noon. Since the Wareham District Court was presumably open at that time (no one suggests otherwise), it was unnecessary and unreasonable for the defendant to be transferred directly to the house of correction under a mittimus

ordering his commitment until March 3. Had the District Court been closed at the time the defendant was released from the hospital, the defendant would have been entitled to an initial appearance at the court's next session. The fact that the defendant was subsequently committed to Bridgewater pursuant to G. L. c. 123, § 18 (a), the statutory provision permitting a court to order a prisoner who has been lawfully committed to a place of detention to be transferred from that place of detention to Bridgewater for observation, cannot excuse the failure to bring the defendant before the court pursuant to rule 7 (a) since an initial appearance is necessary to determine whether a defendant should be committed to a place of detention pending arraignment or released on bail.

The defendant contends that the appropriate remedy for these violations is to dismiss the indictments or to suppress the photographs and fingerprints taken on February 21 and used to connect him to the various armed robberies. Neither remedy is appropriate under the circumstances of this case.

"Dismissal of indictments is a drastic remedy for official misconduct." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 210, cert. denied, 464 U.S. 860 (1983). "[T]he public has a substantial interest in prosecuting those accused of crime and bringing the guilty to justice." *Commonwealth* v. *King*, 400 Mass. 283, 290 (1987). In *Commonwealth* v. *Sanchez*, 403 Mass. 640, 647 (1988), we concluded that there was no basis for dismissing an indictment in order to remedy a forty-nine day delay in arraignment where "the defendant ha[d] not shown any prejudice to his case, nor ha[d] he shown intentional misconduct on the part of the Commonwealth or any unfair advantage to the Commonwealth." Although we did not, in that case, explicitly state the applicable rule for determining whether dismissal of indictments in response to a delay in arraignment is appropriate, we think the proper rule is the one stated in *Commonwealth* v. *Imbruglia*, 377 Mass. 682 (1979), in a slightly different context. We held in *Imbruglia*, in the context of a preindictment delay, that dismissal of indictments is not appropriate unless a defendant demonstrates actual prejudice to his case *and* misconduct on the

part of the Commonwealth which was intentionally undertaken as a means of obtaining a tactical advantage or undertaken with reckless disregard for known risks to the defendant's ability to mount a defense. See *id.* at 688-691. Contra *Commonwealth* v. *Judd*, 25 Mass. App. Ct. 921, 922 (1987) (suggesting that a showing of egregious misconduct on the part of the Commonwealth, absent a showing of prejudice, would be sufficient for dismissing an indictment to remedy a delay in arraignment). The defendant has failed to demonstrate prejudice to his case caused by the violation of his rights, and he has failed to show that there has been egregious misconduct on the part of the Commonwealth. Therefore, dismissal is inappropriate.

The defendant claims prejudice in the loss of an opportunity, due to his illegal detention, to "lin[e] up alibi witnesses," but he has not referred us to any evidence that would support his contention that potential alibi witnesses were lost. He also argues that, due to his illegal detention, he was deprived of an opportunity to "simply disappear[ ] never to be brought to trial." Since the purpose of dismissing indictments in the face of extreme prejudice is to protect a defendant's ability to mount a defense, we decline to recognize interference with a defendant's ability to avoid trial by "leaving for parts unknown" as a form of prejudice. See *Commonwealth* v. *Imbruglia, supra* at 690-691 (loss of an opportunity to receive concurrent State and Federal sentences does not constitute prejudice for purposes of determining whether an indictment should be dismissed). No prejudice has been shown.

Neither is there any support in the record for the defendant's assertion that the Commonwealth intentionally violated his rights in order to gain a tactical advantage or acted in reckless disregard of a known risk to the defendant's ability to mount a defense. The defendant argues specifically only that he was photographed both with and without glasses. Even if that fact were as irregular as the defendant claims it is, it would be an insufficient basis from which to infer that the Commonwealth purposefully detained the defendant on

and after February 21 in order to gain a tactical advantage or with reckless disregard for known risks to his ability to mount a defense. There is no reason to disturb the motion judge's conclusion that the Commonwealth was acting in good faith under the belief that the defendant's detention was lawful. The judge correctly refused to dismiss the indictments.

We turn now to the question whether the judge should have suppressed the photographic and fingerprint evidence as a prophylactic measure. The exclusionary rule, pursuant to which relevant evidence obtained as a result of illegal police conduct is excluded from evidence, does not apply in this case for two reasons. First, the evidence was not obtained as a result of the defendant's detention without a valid bail hearing or his delayed arraignment. Even if the police had transported the defendant from the hospital to the police station to be "booked" and then to court on February 22, which was the day the defendant was released from the hospital, the police inevitably would have obtained the same evidence as part of the police department's standard booking procedure. Second, the detention without bail and delayed arraignment must be attributed to an erroneous court practice rather than to misconduct by law enforcement officers. The exclusionary rule does not apply in such situations. See *Massachusetts* v. *Sheppard*, 468 U.S. 981, 990-991 (1984) (exclusionary rule not intended to punish errors of magistrates and judges, but to deter police illegality). The judge, therefore, did not err in denying the defendant's motion to suppress the photographic and fingerprint evidence.

Next, we address the defendant's contention that one of the robbery indictments should have been dismissed as a remedy for the Commonwealth's failure to preserve potentially exculpatory evidence. The motion judge found that a video camera recorded one of the convenience store robberies for which the defendant was charged, that the videotape of this robbery was delivered to the police, that the police viewed the tape and found it "to be so fuzzy and out of focus

as to be of no use," and that, before the defendant became a suspect, the police returned the tape to the store manager.

The judge explained her reason for denying the defendant's motion to dismiss the relevant indictment as follows: " '[W]hen potentially exculpatory evidence is lost or destroyed, a balancing test is employed to determine the appropriateness and extent of remedial action. The courts must weigh the culpability of the Commonwealth, the materiality of the evidence and the potential prejudice to the defendant. (Citations omitted).' *Commonwealth* v. *Willie*, 400 Mass. 427, 432 (1987). In the instant case, the police failed to preserve the robbery videotape since it was of no value to their investigation. As this failure to preserve evidence was reasonable, I find the police were without culpability. . . .

"In addition, the videotape's materiality is minimal since its fuzzy quality undermines its ability to provide a fair representation of the robbery. While the tape did portray the robber's height and build, this information will be available through the testimony of the store's cashier. Consequently, the prejudice caused to [the defendant] by the tape's loss is marginal. Measuring the police's lack of culpability, the videotape's meager materiality and the paucity of prejudice, I conclude that [the defendant's] motion to dismiss should be denied."

The motion judge applied the balancing test required by our cases. See *Commonwealth* v. *Willie, supra* at 432-433. We will not disturb her conclusion absent a clear abuse of discretion. *Commonwealth* v. *Henderson*, 411 Mass. 309, 312 (1991).

The defendant's final allegation of error is that the exclusion at trial of evidence of other armed robberies prevented him from implicating another individual as the perpetrator of the crimes charged. There was no error.

"[I]t is well established that a defendant should 'have the right to show that crimes of a similar nature have been committed by some other person when the acts of such other person are so closely connected in point of time and method of operation as to cast doubt upon the identification of [the] de-

fendant as the person who committed the crime.' " *Commonwealth* v. *Keizer*, 377 Mass. 264, 267 (1979), quoting *State* v. *Bock*, 229 Minn. 449, 458 (1949). A trial judge determines whether evidence of this nature is admissible according to the standard considerations of relevancy. *Commonwealth* v. *Jewett*, 392 Mass. 558, 562-563 (1984). "Although the decision of a trial judge to admit or reject evidence of other crimes ordinarily will not be disturbed, that decision is not absolute and may be set aside if justice requires a different result." *Commonwealth* v. *Keizer*, *supra* at 267.

In the instant case, the trial judge reviewed police reports concerning several robberies committed after the defendant's arrest and determined that those robberies were not "significantly comparable in the method [of operation] or description of the [perpetrator]." We find nothing in the record to indicate either an abuse of discretion or that justice required the proffered evidence to be admitted. Accordingly, we will not disturb the trial judge's relevancy determination.

The judge also excluded on relevancy grounds evidence of a robbery which occurred before the defendant was arrested. Again, we find nothing in the record to indicate that justice requires a different result. The defendant provided evidence demonstrating that the perpetrator of this robbery used a method of operation generally similar to that used in the charged crimes, but failed to provide any basis for a conclusion that the defendant was not the perpetrator of that crime. See *Commonwealth* v. *Jewett*, *supra* at 560-562 (defendant's description of the proffered evidence was sufficient to alert the judge to its relevance where the offer of proof, *inter alia*, indicated that the defendant could not have perpetrated the crime); *Commonwealth* v. *Brown*, 27 Mass. App. Ct. 72, 76 (1989) ("there must be reasonable assurance that the defendant at bar did not commit the 'similar' offense, that it was in fact committed by someone else"). Although the defendant asserts in his brief that the victim of the robbery, when shown a picture of the defendant, stated that the defendant was not the perpetrator, the defendant provides no citation to indicate that evidence to this effect was before the

judge or, in fact, exists. We find no error in the judge's rul-
ing excluding the evidence on relevance grounds.

*Judgments affirmed.*