COMMONWEALTH *vs.* MICHAEL K. HUNTER.

Middlesex. December 1, 1997. - February 20, 1998.

Present: WILKINS, C.J., LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Evidence,* Exculpatory, Admissions and confessions. *Practice, Criminal,* Preservation of evidence, Loss of evidence by prosecution, Admissions and confessions, Capital case. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Waiver.*

At the trial of a defendant charged with murder by strangulation, the judge did not err in excluding evidence that another person had been previously accused of placing his hands around an acquaintance's neck, offered by the defendant as tending to show that the other person had committed the murder, where the other person's act was not sufficiently similar to the act that killed the victim. [716-718]

In a criminal case, reversal of the defendant's convictions was not warranted by the inadvertent destruction of fingerprint evidence by the Commonwealth's expert witness or by the Commonwealth's loss of certain potentially exculpatory police interview notes, where the defendant failed to show that the materials were destroyed or lost in bad faith, or that he had been prejudiced thereby. [718-719]

At a murder trial, the judge properly admitted in evidence statements made by the defendant to the police while awaiting arraignment, where the record demonstrated that the twenty-hour delay in arraignment was reasonable and not for the purpose of improperly pressuring the defendant, and that the defendant made the statements after a valid waiver of his Miranda rights. [719-724]

No reason appeared on the record of a murder trial for this court to exercise its authority under G. L. c. 278, § 33E, to order a new trial. [724]

INDICTMENTS found and returned in the Superior Court Department on July 1, 1993.

The cases were tried before *Patrick J. King,* J.

*Elliot M. Weinstein* for the defendant.

*Marguerite T. Grant,* Assistant District Attorney (*Adrienne C. Lynch,* Assistant District Attorney, with her) for the Commonwealth.

LYNCH, J. A jury convicted the defendant of murder in the first degree by reason of deliberate premeditation and of

unarmed robbery of a person sixty-five years or older. On appeal, the defendant claims that (1) the trial judge erred in excluding evidence that another person had been accused of committing a similar crime; (2) the Commonwealth lost and destroyed potentially exculpatory evidence; and (3) the judge erred in not suppressing the defendant's statements to police. The defendant also requests that we exercise our power under G. L. c. 278, § 33E, to order a new trial. For the reasons set forth below, we affirm the convictions and decline to exercise our power under G. L. c. 278, § 33E.

*Facts.* We set forth the facts in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with certain issues raised. See *Commonwealth* v. *Nichypor,* 419 Mass. 209, 210 (1994); *Commonwealth* v. *Burnett,* 417 Mass. 740, 741 (1994). The victim, who was an eighty-seven year old woman, lived alone in an apartment in Malden. Among her friends and visitors was her neighbor, Walter Johnson, and Andrea Long. On Wednesday, May 19, 1993, Long and the defendant, her boy friend of one month, visited the victim at her home and cooked her dinner. On the evening of Saturday, May 22, the victim's grandnephew visited her. He left her at approximately 9:30 P.M. Meanwhile, the defendant and Long spent the same day drinking. At 1 P.M. on Sunday, May 23, Johnson found the victim in her apartment, strangled to death. Evidence at trial indicated that the murderer had staged the crime scene to look like a break-in and sexual assault, but neither had actually occurred.

1. *Similar acts of another person.* Prior to trial, the Commonwealth moved to exclude evidence that Johnson had previously been accused of placing his hands around Long's neck. The judge allowed the motion, stating that "there was not sufficient similarity between the alleged assault on Ms. Long and the facts of this case to permit the use of that evidence." The defendant claims the judge's ruling was erroneous. We disagree.

A defendant may "introduce evidence that another person recently committed a similar crime by similar methods, since such evidence tends to show that someone other than the accused committed the particular crime." *Commonwealth* v. *Jewett,* 392 Mass. 558, 562 (1984). A defendant may do so, however, only where "the acts of the other person are so closely connected in point of time and method of operation as to cast doubt upon the identification of [the] defendant as the person

who committed the crime." *Commonwealth* v. *Keizer*, 377 Mass. 264, 267 (1979), quoting *State* v. *Bock*, 229 Minn. 449, 458 (1949). In addition, the shared act must be "particularly distinguishing," rather than commonplace or ordinary. *Commonwealth* v. *Harris*, 395 Mass. 296, 301 (1985). On appeal, we will not disturb the judge's decision to admit or to reject such evidence "unless justice requires a different result." *Commonwealth* v. *Scott*, 408 Mass. 811, 816 (1990), and cases cited.

Justice does not require that we disturb the judge's ruling regarding this evidence. This is primarily because Johnson's act was not sufficiently similar to the act that killed the victim. In the present case the victim was killed by strangulation, which, by its very nature, involves completely cutting off a victim's oxygen supply, and stopping only after the victim has expired. In contrast, the incident sought to be introduced involved Johnson merely placing his hands around Long's neck during an argument. Johnson's act did not cut off Long's oxygen supply, as evidenced by her ability to ask that he remove his hands. Moreover, Johnson immediately removed his hands after Long began to resist. See *Commonwealth* v. *Mayfield*, 398 Mass. 615, 628 (1986) (in trial for murder of child, incident in which another person "grabbed [a neighborhood girl's] arm forcefully, screamed at her, punched the doorbell of her house, and ran away" was not sufficiently similar).

Were we to conclude that the two acts were sufficiently similar to require admissibility, relief to the defendant would still be unwarranted because the act of strangling is a relatively ordinary form of attack. In *Commonwealth* v. *Harris*, *supra* at 300, we affirmed the exclusion of another person's offense, despite the fact that, in both that offense and the attack with which the defendant was charged, the assailant "approached the victim from behind, threatened to kill her, and stabbed her with a knife when she tried to run." We did so primarily because "the points of similarity [were] not particularly distinguishing" and there was a "lack of uniqueness in the manner of commission of the crimes." *Id.* at 301. In our view, the act of strangling is sufficiently commonplace in murder and assault cases, such that introducing Johnson's prior act into the defendant's trial would shed little, if any, light on the true identity of the victim's attacker. See *Commonwealth* v. *Keizer*, *supra* at 267 (exclusion improper where both offenses involved same type of crime, same general location in Boston, same description of assailants,

similar method of commission, and "[i]n addition, similar weapons were used . . . a square-barrelled pistol and a sawed-off shotgun concealed by a paper bag").

2. *The destruction of potentially exculpatory evidence.* The defendant next claims that the Commonwealth's loss of one piece of potentially exculpatory evidence and the destruction of another require reversal of his convictions. A fingerprint the police found on duct tape attached to the victim's wheelchair was accidentally destroyed by a fingerprint expert as he attempted to enhance the print. The handwritten notes that Trooper Christopher P. Shields took during his and Sergeant Stephen Ruelle's interview of Walter Johnson were lost. According to the interviewing officers' testimony, Johnson made statements that could be interpreted as incriminating him in the crime.

"When potentially exculpatory evidence is lost or destroyed, the court must 'weigh the culpability of the Commonwealth, the materiality of the evidence, and the potential prejudice to the defendant.' " *Commonwealth* v. *Sarourt Nom, ante* 152, 159 (1997), quoting *Commonwealth* v. *Willie,* 400 Mass. 427, 432 (1987). The Commonwealth is not required to prove "good faith or earnest efforts to preserve the evidence." *Commonwealth* v. *Willie, supra.* The defendant, on the other hand, must establish a " 'reasonable possibility, based on concrete evidence rather than fertile imagination,' that access to the [material] would have produced evidence favorable to his cause." *Id.* at 433, quoting *Commonwealth* v. *Neal,* 392 Mass. 1, 12 (1984).

Here the destruction of the fingerprint does not warrant reversing the convictions. There is no evidence that the fingerprint expert was at all culpable. Rather, the judge expressly found that he "exercised due care in handling and testing the duct tape" and that he "had no way of knowing" that the test he was performing would destroy the print. See *Commonwealth* v. *Buckley,* 410 Mass. 209, 218 (1991) (no new trial required where trooper "inadvertently" destroyed handwriting exemplar while conducting fingerprint tests).[1] Furthermore, the defendant had been furnished several enlarged photographs of the print by the Commonwealth. Both the defendant's and the Com-

---

[1] The fact that the defendant did not request the original fingerprint for over one year after it was found likewise suggests that the destruction was not in bad faith. *Commonwealth* v. *Sarourt Nom, ante* 152, 159 (1997) ("where the request for the tape was not made until the trial had begun, the defendant has not shown that the police acted in bad faith in destroying the tape").

monwealth's expert witnesses based their testimony on these photographs. It was only when the defendant's expert requested an additional photograph (some thirteen months after receiving the first photographs) that he learned of the destruction of the print. The defendant suffered no prejudice. See *id.* at 218-219 (destruction of bag containing handwriting exemplar did not prejudice defendant where "[t]he expert testimony at trial was based entirely on the photograph of the bag, an item to which the defendant had access"); *Commonwealth* v. *Phoenix*, 409 Mass. 408, 413-414 (1991) (no prejudice where [1] Commonwealth's expert testimony stemmed from photograph of fingerprint before it was washed away; and [2] defendant had access to photograph). Finally, the defendant has made no showing that access to the fingerprint itself might have provided anything more favorable to his cause than the photographs did.

Similarly, the loss of the interview notes does not warrant reversing the convictions. Based on the potentially exculpatory contents of Sgt. Ruelle's notes from the same interview, it appears that a "reasonable possibility" exists that Trooper Shields's notes would have proved favorable to the defendant. *Commonwealth* v. *Neal, supra.* However, there was no evidence presented at trial suggesting that the notes were lost in bad faith. See *Commonwealth* v. *Martinez*, 420 Mass. 622, 629 (1995) (Commonwealth not culpable and new trial denied, in part, because "[t]here is no showing that the police were more than negligent in losing the wallet"); *Commonwealth* v. *Waters*, 420 Mass. 276, 279 (1995). Moreover, the loss of the notes did not likely prejudice the defendant, because Sgt. Ruelle's notes from the very same interview were in evidence, and the defendant cross-examined both officers about the interview. *Commonwealth* v. *Olszewski*, 416 Mass. 707, 717 (1993), cert. denied, 513 U.S. 835 (1994) (where witness's statement exonerating defendant was destroyed, no prejudice found because "the general contents of the destroyed statement were known, and defense counsel was permitted to cross-examine fully concerning its making and destruction").

3. *The defendant's statements.* The defendant also contends that the judge should have suppressed his statements because (1) the police unreasonably delayed his arraignment; and (2) his waiver of Miranda rights prior to making his statements was invalid.

At the suppression hearing, the judge found that, on June 1, 1993, at approximately 2:55 P.M., the defendant was arrested on

an unrelated charge and brought to the police station. When booking and other postarrest procedures were completed, it was well after 3 P.M. The defendant was not arraigned at that time because the Malden District Court would not handle arraignments after 3 P.M. Consequently, the defendant remained at the police station. At approximately 4:50 P.M., the police obtained a Miranda waiver from the defendant and commenced questioning him about the death of the victim. This lasted until approximately 8:30 P.M., at which time the defendant returned to his cell and slept. During this first round of questioning, the defendant admitted only that he had been in the victim's apartment on either Wednesday, May 19, or Friday, May 21. He denied having been there on Saturday, May 22, the night of the victim's death.

On June 2, at 1 A.M., after obtaining further evidence linking the defendant to the victim on the night of her death, the police recommenced the interrogation, again receiving a Miranda waiver from the defendant. This time, the defendant eventually admitted to entering the victim's apartment the night of May 22, finding her on the kitchen floor in a semiconscious state, and placing her on her bed. The questioning ceased at 5:30 A.M., and the defendant slept until 9 A.M., when questioning began again. The defendant then waived his Miranda rights for a third time, as well as his right to a speedy arraignment. In response to this final round of questioning, the defendant made further incriminating statements, including that, during his May 22 visit, he "leaned on her neck," but that he "didn't mean to hurt her." The police ceased interrogating the defendant at 10 A.M. and brought him to Malden District Court where he was arraigned.

The defendant's delayed arraignment did not require the suppression of his statements. Police have a "duty to bring an arrested person before a court as soon as is reasonably possible." *Commonwealth* v. *Rosario*, 422 Mass. 48, 51 (1996), citing *Keefe* v. *Hart*, 213 Mass. 476, 482 (1913). At the time of the defendant's suppression hearing, the reasonableness of any delay was to be determined by the circumstances.[2] *Commonwealth* v. *Perito*, 417 Mass. 674, 680 (1994). These

[2]In *Commonwealth* v. *Rosario*, 422 Mass. 48, 56 (1996), we announced that, "for the future," statements made within six hours of arrest will not be excluded for unreasonable delay, while statements made after that period must be excluded. See *Commonwealth* v. *Butler*, 423 Mass. 517, 524 (1996). Because *Rosario* was decided after the time of interrogation in the present

circumstances include "(1) whether Miranda warnings were given; (2) . . . the passage of time between the illegal arrest and the confession; and (3) the purpose and flagrancy of the official misconduct." *Commonwealth* v. *Rosario, supra* at 52, citing *Commonwealth* v. *Sylvia*, 380 Mass. 180, 183-184 (1980). "We have accepted rulings that an arrest made after court closed for the day, followed by an arraignment on the next day, did not involve unreasonable delay and that a confession otherwise properly obtained in the interim need not be suppressed." *Commonwealth* v. *Rosario, supra*, citing *Commonwealth* v. *Dubois*, 353 Mass. 223, 226 (1967), and *Commonwealth* v. *DiStasio*, 294 Mass. 273, 284 (1936).

Here, the defendant received Miranda warnings and repeatedly waived his rights prior to making any statement. Moreover, the elapsed time between arrest and arraignment, nearly twenty hours, is roughly the same (or less) as that in past cases where we deemed the delay reasonable. See *Commonwealth* v. *Rosario, supra* at 49-50 (defendant arrested between 2:30 P.M. and 3 P.M. and arraigned following afternoon after giving incriminating statements); *Commonwealth* v. *Banuchi*, 335 Mass. 649, 656 (1957) (delay of roughly two days deemed not unreasonable). Cf. *Commonwealth* v. *Daniels*, 366 Mass. 601, 604-605 (1975) (defendant given Miranda warnings at noon, confessed at 3 P.M., booked at 7 P.M., arraigned next morning). Finally, the judge correctly found that the purpose of delaying the arraignment was not to apply improper pressure on the defendant. See *Commonwealth* v. *Perito, supra*; *Commonwealth* v. *Cote*, 386 Mass. 354, 361 n.11 (1982). Rather, as the judge noted in his decision, the arraignment was postponed solely because the Malden District Court, as a matter of policy, prohibited arraignments after 3 P.M. Consequently, the defendant's motion to suppress his confession on this ground was properly denied.

Regarding the defendant's waiver of his Miranda rights, the judge's ruling was likewise appropriate. "In reviewing a judge's determination regarding a knowing waiver of Miranda rights and voluntariness, we 'grant substantial deference to the judge's ultimate conclusions and we will not reject a judge's subsidiary findings if they are warranted by the evidence.'" *Commonwealth* v. *Mandile*, 397 Mass. 410, 412 (1986), quoting *Commonwealth* v. *Benoit*, 389 Mass. 411, 419 (1983). "How-

case, however, it does not control our analysis.

ever, we conduct an independent review to ascertain whether the judge properly applied the law." *Commonwealth* v. *Rodriguez*, 425 Mass. 361, 364 (1997). The Commonwealth has the burden of proving beyond a reasonable doubt that a Miranda waiver was valid. *Commonwealth* v. *Magee*, 423 Mass. 381, 386 (1996). "To be valid [a] waiver must be made voluntarily, knowingly, and intelligently." *Id.*, quoting *Commonwealth* v. *Edwards*, 420 Mass. 666, 670 (1995). In determining the voluntariness of a waiver, "the court must examine the totality of the circumstances surrounding the making of the waiver." *Commonwealth* v. *Magee, supra*, quoting *Commonwealth* v. *Edwards, supra*. The relevant factors include "promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency (whether the defendant or the police), and the details of the interrogation, including the recitation of Miranda warnings." *Commonwealth* v. *Mandile, supra* at 413.

The facts found by the judge amply support the conclusion that the defendant's waiver was valid. The defendant was twenty-six years old at the time of his arrest and had attained a twelfth grade education. See *Commonwealth* v. *L'Abbe*, 421 Mass. 262, 270 (1995). At the time he waived his rights, he appeared "friendly and cooperative" and showed no signs of intoxication. See *Commonwealth* v. *Raymond*, 424 Mass. 382, 396 (1997); *Commonwealth* v. *Edwards, supra* at 674. Moreover, on three separate occasions, the defendant signed a Miranda waiver form, stated that he understood each of his rights, and agreed to waive them. *Commonwealth* v. *Mello*, 420 Mass. 375, 384 (1995). Finally, the motion judge found no evidence of coercion or other unfair tactics by the police.[3] See *Commonwealth* v. *Silva*, 388 Mass. 495, 503 (1983); *Commonwealth* v. *Harris*, 371 Mass. 462, 466-67 (1976).

---

[3]The defendant appears to challenge the judge's finding of fact that the police did not engage in any misconduct. Specifically, the defendant claims that requiring him to answer questions at 1 A.M. at the police station constitutes improper, unfair tactics. We disturb the judge's factual findings only if they are clearly erroneous. *Commonwealth* v. *Mello*, 420 Mass. 375, 381 n.8 (1995). Among factors taken into account in determining voluntariness is whether physical punishment such as deprivation of food or sleep has been used by the police. *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 226 (1973). "Off-hour questioning," such as during the early morning hours, has been held in some Federal cases to be a coercive circumstance. See, e.g., *Spano* v. *New York*, 360

The fact that the defendant executed two of the waivers after several hours at the police station does not necessarily render them invalid. As the judge expressly found, the defendant slept or rested for several hours between interrogation sessions and generally appeared "alert" when he waived his rights. See *Commonwealth* v. *Raymond, supra*; *Commonwealth* v. *Fryar*, 414 Mass. 732, 741-742 (1993), *S.C.*, 425 Mass. 237, cert. denied, 118 S. Ct. 636 (1997) (Miranda waiver valid even where defendant arrested at 2 A.M., had no food or sleep during night, and finally gave incriminating statements at 6:30 A.M. and 10:30 A.M.; court relied on defendant's signing of waiver form and his "rational and coherent" appearance). Contrast *Commonwealth* v. *Magee, supra* at 387 (Miranda waiver invalid, in part, because of defendant's "lack of sleep"). Similarly, the defendant's claimed "outbursts of emotional instability" at certain points of the interrogation do not invalidate the waiver. Although there was evidence that the defendant was "crying" during some of the questioning, the judge concluded that such behavior fell far short of the sort of debilitation which renders an individual "incapable of withholding the information conveyed." *Commonwealth* v. *Benoit*, 410 Mass. 506, 511 (1991). See *Commonwealth* v. *Magee, supra* at 383 (waiver deemed invalid where defendant was "exhausted, emotionally distraught, and disheveled, and her responses to questions were interrupted by periods of sobbing and shaking"). Moreover, on seeing the defendant become upset, the police gave the defendant breaks and resumed the interrogation only after he had regained his composure. For all

U.S. 315, 322 (1959); *Jurek* v. *Estelle*, 623 F.2d 929, 952 n.14 (5th Cir. 1980) (Johnson, J., specially concurring), cert. denied, 450 U.S. 1001 and 450 U.S. 1014 (1981); *United States ex rel. Adams* v. *Bensinger*, 507 F.2d 390, 395 (7th Cir. 1974), cert. denied, 421 U.S. 921 (1975). We are unaware of any cases in which such off-hour questioning is the sole circumstance suggestive of coerciveness in the police interrogation. We view such police practice with disfavor, especially when a suspect's sleep is interrupted in the middle of the night or in the early morning hours with no apparent necessity to do so at that time. We are mindful, however, that the six-hour rule of *Commonwealth* v. *Rosario, supra*, may supply the necessity for such questioning. Here we defer to the judge's conclusion that in this case, the off-hour questioning without the presence of other factors did not rise to the level of coercion. The record indicates that, prior to the late-night questioning, (1) the defendant was allowed to rest for several hours; (2) the police let the defendant splash water on his face in the restroom so that he could be more alert for the interrogation; and (3) the continuing investigation disclosed information that made the reinterrogation of the defendant appropriate. Because the record amply supports the judge's finding of fact, we reject the defendant's claim.

of these reasons, we see no basis to interfere with the judge's ruling that the defendant's waiver of his Miranda rights was valid, and that his statements were therefore admissible at trial.[4]

4. *General Laws c. 278, § 33E.* After carefully reviewing the entire record, we decline to exercise our plenary power under G. L. c. 278, § 33E, to order a new trial.

*Judgments affirmed.*

---

[4]"Due process requires a separate inquiry into the voluntariness of the [defendant's] statement, apart from the validity of the Miranda waiver." *Commonwealth* v. *Magee*, 423 Mass. 381, 387 (1996). "The voluntariness .of the waiver on the basis of Miranda and the voluntariness of the statements on due process grounds are separate and distinct issues but they are both determined in light of the totality of the circumstances and they share many of the same relevant factors." *Commonwealth* v. *Edwards*, 420 Mass. 666, 673 (1995). As previously discussed, the defendant here had a twelfth grade education, signed multiple Miranda waiver forms, and was generally alert and coherent at the time of his incriminatory statements. Moreover, there was no evidence suggesting that the police acted improperly during the course of the interrogation. Rather, the police gave the defendant the opportunity to rest for several hours between interrogation sessions, and allowed him to take breaks when he became upset during questioning. Taken together, these facts establish that the defendant's statements were given voluntarily. Accordingly, the defendant's motion to suppress was properly denied.