NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-190

COMMONWEALTH

vs.

DEBORAH J. HOLMES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Deborah Holmes, appeals from her conviction of operating a motor vehicle while under the influence of alcohol (OUI), second offense, in violation of G. L. c. 90, § 24 (1) (a) (1).  She argues that there was insufficient evidence that she operated a motor vehicle or that, if she did operate a vehicle, that she did so while intoxicated.  Holmes also contends that a District Court judge erred in denying her motion to suppress statements she made to a police officer on the night of the offense.  We affirm.

Background.  At 12:45 A.M. on November 29, 2015, Stoughton police officers Barber and Covino were dispatched to investigate a matter unrelated to this case in a Walgreens parking lot.

When they arrived at the parking lot, the police saw the defendant lying on the ground next to a parked Nissan sedan with a Vermont license plate. The officers approached Holmes and asked if she needed help. Holmes laughed and rolled around on the ground. The officers directed Holmes to stand up but she was unable, so the officers lifted her to her feet. Once upright Holmes was very unsteady on her feet and had to lean against a vehicle for support. At various points during their interaction with Holmes, the officers observed that she smelled strongly of alcohol, spoke with slow and slurred speech, and had bloodshot eyes.

The officers asked Holmes to remain by the parked Nissan while they attended to the unrelated matter. Holmes nevertheless left the Nissan, and at some later point entered a different automobile that had recently arrived at the parking lot, with its engine still idling. Holmes attempted to start the engine of this vehicle, using keys that were in her possession. When the officers told Holmes that the car was not hers and directed her to get out, Holmes laughed and responded that it was her car. Eventually, the officers had to physically remove Holmes from the vehicle, at which point they arrested her for disorderly conduct.

The officers placed Holmes in the backseat of a police cruiser and informed her of her Miranda rights. Holmes indicated that she understood these rights. While driving to the police station, Officer Barber questioned Holmes about whether she had consumed alcohol that day, how she had travelled to the Walgreens parking lot, whether she owned the Nissan, and whether anyone else had been in the vehicle with her. Holmes denied consuming any alcohol and explained that she alone had driven the vehicle, a rental car, from the Elks Lodge in Braintree to the Walgreens in Stoughton. She stated that she had left the Elks Lodge at midnight. Officer Barber testified that it was his opinion that the defendant was intoxicated. Holmes was charged with OUI.[1]

Holmes filed a pretrial motion to suppress the statements she made while she was being transported to the police station, claiming that she did not receive Miranda warnings prior to making the statements, and that the statements were not made voluntarily. After an evidentiary hearing, the motion judge found as fact that Officer Barber advised Holmes of her Miranda

---

[1] Holmes faced two additional charges, for disorderly conduct in violation of G. L. c. 272, § 53, and malicious destruction of property in violation of G. L. c. 266, § 127, neither of which are the subject of this appeal. The Commonwealth dismissed the malicious destruction of property count prior to trial, and the jury found Holmes not guilty of disorderly conduct.

rights and that Holmes stated that she understood those rights. The judge denied the motion the same day in a margin endorsement.

A one-day jury trial took place on February 28, 2017, at the conclusion of which the jury found Holmes guilty of operating a motor vehicle while under the influence of intoxicating liquor. This appeal followed.

Discussion. On appeal, Holmes argues that there was insufficient evidence presented at trial (1) that she was operating a motor vehicle, or (2) that any operation occurred while she was under the influence of alcohol. She also argues (3) that the motion judge erred in denying her motion to suppress the statements she made to Officer Barber en route to the police station. We address each argument in turn.

1. Sufficiency of the evidence. In deciding whether the evidence at trial was sufficient to support an OUI conviction, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). "[T]o establish the defendant's guilt of OUI in violation of G. L. c. 90, § 24 (1) (a) (1), the Commonwealth was

4

required to prove that the defendant (1) operated a motor vehicle, (2) on a public way, (3) while under the influence of alcohol." Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 392 (2017). Here, Holmes challenges both the first and third elements, claiming that there was insufficient evidence that she operated a motor vehicle or that if she did, that she did so while intoxicated.

a. Operation. While there was no direct evidence of Holmes's operation of a motor vehicle, "direct evidence that the defendant operated the vehicle is not required." Commonwealth v. Beltrandi, 89 Mass. App. Ct. 196, 199 (2016). Rather, it is sufficient to prove operation by circumstantial evidence and reasonable inferences drawn therefrom. Id. at 199-200. See Commonwealth v. Hilton, 398 Mass. 63, 67 (1986); Commonwealth v. Shea, 324 Mass. 710, 714 (1949). A defendant's confession to operating a vehicle is "powerful evidence of operation," Commonwealth v. Lagotic, 102 Mass. App. Ct. 405, 408 (2023), but such an admission standing alone is insufficient to support an OUI conviction. Commonwealth v. Leavey, 60 Mass. App. Ct. 249, 251 (2004). Rather, the defendant's admission must be corroborated by some evidence "that the crime was real and not imaginary" (citation omitted). Commonwealth v. Villalta-Duarte, 55 Mass App. Ct. 821, 825 (2002). See Commonwealth v. Forde,

5

392 Mass. 453, 458 (1984).  The standard for sufficient corroboration is "quite minimal."  Lagotic, supra at 409, quoting Commonwealth v. Green, 92 Mass. App. Ct. 325, 327 (2017).

During her exchange with Officer Barber in the police cruiser, Holmes admitted that she alone drove the Nissan from the Elks Lodge in Braintree to the Walgreens parking lot in Stoughton.[2]  Holmes contends, however, that there is no corroborative evidence to support her admission.  We disagree.

In arguing that her admission is insufficient evidence of operation, Holmes relies heavily on Commonwealth v. Leonard, 401 Mass. 470, 471-473 (1988), where the defendant's admission that he was driving, standing alone, was held to be insufficient to submit the case to the jury.  Leonard is factually inapposite, however, because unlike in Leonard, here there is no evidence of anyone else who could have been operating the vehicle.  Indeed, that is the basis on which this court distinguished Leonard in Lagotic, 102 Mass. App. Ct. at 409.  In Lagotic, the evidence corroborating the defendant's admission of operation consisted

_____

[2] We separately address the question of the voluntariness of Holmes's admission below.  In any event, sufficiency under the Latimore standard "is to be measured upon that which was admitted in evidence without regard to the propriety of the admission."  Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 98 (2010).

6

of the defendant's location on the roadside near the crashed and damaged vehicle, his need of medical assistance, and importantly, the absence of any evidence that another person was driving the vehicle.  Id.

The facts here harken to those in Lagotic.  First, the police found Holmes lying on the ground beside the parked Nissan, which she stated was her rental car.  See Commonwealth v. Congdon, 68 Mass. App. Ct. 782, 783-784 (2007) (police officers' observation of defendant walking toward vehicle corroborative of operation).  See also Lagotic, 102 Mass. App. Ct. at 409; Commonwealth v. Proia, 98 Mass. App. Ct. 125, 128 (2020).  There was no other person in or near the car.  Second, Holmes was carrying keys that she attempted to use to start the engine of another person's car; inferably, those were keys to the vehicle next to which she was found.  See Commonwealth v. Petersen, 67 Mass. App. Ct. 49, 52 (2006) (defendant carrying car keys corroborative of operation).  Furthermore, "there was an 'absence of evidence tending to suggest that someone other than the defendant was operating' the vehicle."  Lagotic, supra at 409, quoting Commonwealth v. Cromwell, 56 Mass. App. Ct. 436, 439 (2002).  This circumstantial evidence is sufficient to meet the low threshold of "minimal" corroboration (citation omitted).  Villalta-Duarte, 55 Mass App. Ct. at 825-826.  Taken together

7

with Holmes's admission that she had driven from Braintree to Stoughton, such evidence is sufficient proof of operation.

b. _Impairment_. Holmes also argues that there was insufficient evidence that she operated a motor vehicle while under the influence of alcohol. "[T]he phrase 'under the influence' refers to impairment, to any degree, of an individual's ability to safely perform the activity in question." Commonwealth v. Veronneau, 90 Mass. App. Ct. 477, 479 (2016). "Thus, 'in a prosecution for [OUI], the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished the defendant's ability to operate a motor vehicle safely.'" Id., quoting Commonwealth v. Connolly, 394 Mass. 169, 173 (1985). Impairment may be proven by circumstantial evidence. See Commonwealth v. Flanagan, 76 Mass. App. Ct. 456, 464 (2010); Commonwealth v. Sudderth, 37 Mass. App. Ct. 317, 321 (1994).

In this case, the issue is whether Holmes drove to the Walgreens parking lot while she was intoxicated. We conclude that the evidence amply supports such an inference. Importantly, Officers Barber and Covino arrived at the Walgreens parking lot and found Holmes lying on the ground next to her rental car at approximately 12:45 A.M. Holmes indicated to the officers that she left the Elks Lodge in Braintree at midnight,

8

a mere forty-five minutes prior to the officers discovering her in the parking lot.

The above facts support a reasonable inference that Holmes was intoxicated while she was driving, because when the officers encountered Holmes in the parking lot at 12:45 A.M. there was abundant evidence that she was intoxicated: her breath smelled strongly of alcohol, her speech was slurred, her eyes were bloodshot, she was unable to maintain her balance without assistance, and she behaved erratically and even bizarrely. See Gallagher, 91 Mass. App. Ct. at 390-391 (bloodshot, glassy eyes, odor of alcohol, slurred speech, and defendant's admission to consuming alcohol immediately prior to driving sufficient evidence of impairment); Commonwealth v. Rarick, 87 Mass. App. Ct. 349, 354 (2015) (odor of alcohol, red and glassy eyes, among other indicia). Furthermore, Officer Barber testified that, in his opinion, the defendant was intoxicated in the Walgreens parking lot. A jury could employ its common knowledge to reasonably infer that the defendant's intoxicated condition did not arise in the short period after Holmes arrived at the Walgreens parking lot, but instead preceded her arrival.

2. Voluntariness of statements made to the police. Next, Holmes argues that the motion judge erred in failing to suppress Holmes's statements to Officer Barber en route to the police

9

station.  She contends that she neither waived her Miranda rights nor made the statements voluntarily.  We are not persuaded.

"In reviewing a judge's determination regarding a knowing waiver of Miranda rights and voluntariness, we grant substantial deference to the judge's ultimate conclusions and we will not reject a judge's subsidiary findings if they are warranted by the evidence" (quotation and citation omitted).  Commonwealth v. Hunter, 426 Mass. 715, 721 (1998).  "However, we conduct an independent review to ascertain whether the judge properly applied the law" (quotation and citation omitted).  Id. at 721-722.  Credibility determinations "are the province of the motion judge who had the opportunity to observe the witnesses."  Commonwealth v. Tremblay, 460 Mass. 199, 205 (2011).

Here, the motion judge found that Officer Barber's testimony at the hearing on the motion to suppress was "credible in all material respects."  The judge found that Officer Barber advised Holmes of her Miranda rights, and asked if she understood those rights.  Holmes then responded that she understood her rights and proceeded to make subsequent

10

statements, including an admission that she drove from Braintree to Stoughton around midnight.[3]

"Although the voluntariness of a Miranda waiver and the voluntariness of a particular statement made during custodial interrogation 'are separate and distinct issues,' the 'test' for both is 'essentially the same.'" Commonwealth v. Newson, 471 Mass. 222, 229 (2015), quoting Commonwealth v. Edwards, 420 Mass. 666, 670 (1995). That test is whether "in light of the totality of the circumstances surrounding the making of the statement[s], the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act." Newson, supra at 229-230, quoting Tremblay, 460 Mass. at 207. "Under this totality of the circumstances test, [the court] consider[s] all of the relevant circumstances surrounding the interrogation and the individual characteristics and conduct of the defendant." Newson, supra at 230, quoting Tremblay, 460 Mass. at 207. Factors considered include

> "promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency (whether the defendant or the police), and the details of the interrogation, including the recitation of Miranda warnings."

---

[3] Importantly, Holmes does not challenge the substance of any of the motion judge's factual findings.

11

Newson, supra at 230, quoting Tremblay, 460 Mass. at 207.

In this case, the circumstances surrounding Holmes's statements bear no indicia of coercion, intimidation, or other improper inducement by police. Holmes argues, however, that her statements were nevertheless nonvoluntary because she exhibited numerous signs of intoxication. However, "[w]hile intoxication bears heavily on a determination whether a Miranda waiver was voluntary . . . intoxication alone is insufficient to invalidate a waiver." Commonwealth v. Walters, 485 Mass. 271, 279 (2020). Despite her intoxication, Holmes was able to answer Officer Barber's questions coherently, and her actions and answers demonstrated that she understood her rights under the circumstances. See Commonwealth v. Ward, 426 Mass. 290, 294-296 (1997) (no waiver where, although intoxicated, defendant was coherent and able to understand his circumstances and surroundings). As evidence of Holmes's voluntary and rational thought, the Commonwealth points to Holmes's efforts to exculpate herself by denying that she consumed any alcohol on the evening in question.

Under the circumstances, we perceive no error in the judge's conclusion that Holmes validly waived her Miranda rights and provided voluntary responses to Officer Barber's questions. The judgment is affirmed.[4]

So ordered.

By the Court (Meade,
  Englander & Hodgens, JJ.[5]),

Clerk

Entered:  August 30, 2024.

---

[4] Holmes also argues that her statements to Officer Barber in the police cruiser were not voluntary under the humane practice doctrine.  When voluntariness is an issue, long standing "humane practice" in Massachusetts generally requires a voir dire before the judge, and a ruling by the judge to determine that a confession is voluntary, before it may be submitted to the jury.  See Commonwealth v. Dyke, 394 Mass. 32, 35 (1985).  Here, as the Commonwealth notes in its appellate brief, the judge was not required to conduct a voir dire under the humane practice rule because the issue of voluntariness had already been decided in connection with Holmes's motion to suppress.  See Commonwealth v. Earl, 102 Mass. App. Ct. 664, 682 n.15 (2023), citing Commonwealth v. Bryant, 390 Mass. 729, 745 (1984).

[5] The panelists are listed in order of seniority.