## COMMONWEALTH *vs.* STEVEN RICHARDSON.

No. 98-P-864.

Middlesex. January 13, 2000. - April 5, 2000.

Present: ARMSTRONG, SMITH, & BROWN, JJ.

*Evidence,* Exculpatory, Failure to produce evidence, Nonexistence of evidence, Cross-examination. *Practice, Criminal,* Indictment, Dismissal, Argument by prosecutor. *Due Process of Law,* Fair trial, Delay in commencement of prosecution.

A criminal defendant was not entitled to dismissal of the indictment against him by reason of the loss of items of possibly exculpatory evidence, where the items were never in the control of the government. [83-84]

A criminal defendant was not entitled to dismissal of a rape indictment on account of the more than six-year delay between the alleged rape and the date of indictment, where the delay was not attributable to the Commonwealth and where the defendant demonstrated no significant prejudice. [84-85]

At the trial of a rape indictment, any prejudice arising from the prosecutor's improper elicitation of a statement of the defendant that had not been produced during pretrial discovery, did not warrant any relief, where the statement was not an admission and where defense counsel did not request a continuance to consider a shift in strategy. [85-86]

At a criminal trial, the remarks of the prosecutor in closing argument were reasonable responses to defense counsel's argument, were supported by the record, or were not otherwise improper. [86]

INDICTMENT found and returned in the Superior Court Department on August 16, 1995.

A motion to dismiss was heard by *Robert W. Banks,* J., and the case was tried before him.

*Thomas C. Foley* for the defendant.

*Afton M. Templin,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted by a Superior Court jury of rape of a child by force. G. L. c. 265, § 22A. On appeal, he alleges that (1) the loss of potentially exculpatory evidence

requires dismissal of the indictment; (2) a more than six-year delay between the date of the criminal acts alleged and the return of the indictment requires dismissal; (3) the defense was significantly impaired by the prosecutor's failure to disclose an admission made by the defendant; and (4) the prosecutor's closing was improper. We affirm.

We briefly rehearse the pertinent facts. The victim is the defendant's daughter. At the time of the rape, the defendant and the victim lived in the same house along with the defendant's wife (the victim's mother) and the couple's two other children, a boy and a girl.

The defendant was unemployed, spent most of his time at home, and frequently abused alcohol. One evening, after drinking heavily, the defendant awoke his fourteen year old daughter, and confronted her about entries in the girl's diary. The victim asked to be left alone, but the defendant approached her bed, carrying a knife. He climbed on top of the victim, cut off her underwear, and vaginally raped her.

After the attack, the defendant warned the victim to say nothing. The next morning, the victim did not speak of the rape to anyone. However, once at school, she became increasingly upset. At about 10:00 A.M., she went to the headmaster's office, called her mother, and revealed what had happened. The victim went to the hospital that afternoon, where she was examined by a physician. The doctor noted superficial wounds and dried blood on the victim's thigh, chest, neck, and side.

After consulting with the police, the victim decided not to press charges. However, about four years later, the victim, then eighteen years old, changed her mind. The case was reopened, and the defendant ultimately was arrested.

Other relevant facts are included in our analysis as necessary.

1. *Loss of evidence.* The defendant argues that his defense was significantly impaired by the loss of several pieces of potentially exculpatory evidence, including the victim's diary, the clothing she had worn during the rape, the sheets that had been on the bed on the night of the attack, two notes allegedly written by the defendant in the aftermath of the rape, and the rape kit prepared by the doctor who had examined the victim. While the defendant concedes that none of the items was ever in the control of the government, he faults the Commonwealth for failing to take affirmative steps to preserve this evidence. He asserts on appeal (as he did by way of pretrial motion) that this omission requires dismissal of the indictments. We disagree.

Contrary to the defendant's arguments, police officers are under no duty to carry out any particular type of investigation that might lead to the discovery and preservation of exculpatory evidence.[1] See *Commonwealth* v. *Campbell*, 378 Mass. 680, 702 (1979). Their only obligation is to preserve any evidence actually collected. The basis for this rule is plain: while the defendant is free to pursue leads the police ignore, he is powerless to protect irreplaceable evidence already in the Commonwealth's custody. Consistent with this approach, the government here did not commit a breach of any duty, especially in view of the fact that the victim initially opted not to press charges against the defendant.

Anticipating our conclusion that the Commonwealth cannot be held accountable for the loss of the evidence in question, the defendant points to cases like *Commonwealth* v. *Mahnke*, 368 Mass. 662, 676-678 (1975), and *Commonwealth* v. *Allen*, 395 Mass. 448, 453-458 (1985), for the proposition that the actions of private persons may, in extraordinary circumstances, render a criminal prosecution unlawful on due process grounds. While it is true that a court might be obliged to exclude evidence obtained by private actors through the use of violent coercion, or through other shocking or reprehensible means, the defendant has cited no case (nor have we been able to find any) in which a criminal trial has been barred on the basis of a private person's destruction of evidence.

Further, even were it possible to foresee a situation in which a private person's destruction of evidence so tainted the prospects for a fair trial that principles of due process precluded one, this case does not present such a situation. Trial occurred many years after the rape occurred. The defendant has not suggested that any of the lost items were discarded with malicious intent. We note also that the defendant has advanced no real basis from which to infer that the evidence lost — particularly the diary and notes — would, in fact, have furthered his cause. Dismissal of the indictments is not required here.

2. *Preindictment delay.* Next, the defendant charges that the indictments should have been dismissed because of the long

---

[1]However, the failure to investigate leads may provide in some cases the basis for both comment by defense counsel at trial, and special jury instructions relating to the significance of such conduct. See *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980); *Commonwealth* v. *Flanagan*, 20 Mass. App. Ct. 472, 475-476 (1985).

delay (more than six years) between the rape and the date of the indictment. There is no indication that the delay was attributable in any way to dilatory tactics on the part of the Commonwealth, an essential prerequisite for relief. See *Commonwealth* v. *Perito*, 417 Mass. 674, 681-682 (1994) (relief requires proof of both prejudice *and* intentional delay).

Even assuming that principles of due process might require dismissal where a defendant suffered palpable prejudice as a result of a long preindictment delay without any government misconduct, there is no indication of any such significant prejudice here. As noted already, the loss of evidence cited by the defendant does not provide a basis for reversal. Nor has the defendant pointed to any key witnesses who became unavailable to him as a result of the passage of time. In short, the defendant has not demonstrated the requisite prejudice to justify the relief he seeks.

3. *Disclosure of statements.* During cross-examination of the victim, defense counsel suggested that the victim had fabricated her allegations to punish the defendant for refusing to give her money. On redirect, the prosecutor elicited testimony that the victim had overheard a conversation in which the defendant said he would give the victim the money if she dropped the charges. Defense counsel immediately objected, arguing that the statement had not been produced during pretrial discovery. The defendant now argues that the prosecutor's omission impaired his defense, mandating reversal.

The pretrial order required the prosecutor to produce any statements made by the defendant. As noted, the contested remark was made in connection with an issue broached for the first time during defense cross-examination. The prosecutor's explanation proffered at trial was that she did not anticipate using the statement, and for this reason had not disclosed it.

This was a violation of the discovery order; however, we discern little prejudicial impact flowing from the unexpected (apparently, at least, from the defendant's perspective) admission of the statement — a view reinforced by the fact that defense counsel did not request a continuance to consider whether any shift in strategy was required. Contrary to assertions in the defendant's brief, the victim's comment did not amount to an admission that a rape had occurred. Indeed, in context, the statement may be viewed as support for the defendant's allegation that the victim lodged charges in retalia-

tion for the defendant's failure to give her money that she had demanded (a weak defense in view of the victim's accusations made years before at the time of the attack). No relief is required.

4. *Prosecutor's closing.* Finally, the defendant faults the prosecutor for various alleged defects in her closing argument. Although the prosecutor appears to have been attempting to snatch defeat from the jaws of victory, none of the claimed defects was fatal.[2] We consider each briefly in turn.

Admonishing the jury that they should not "punish" the victim for delaying prosecution was a reasonable response by the prosecutor to the defendant's discussion during his own closing of the significance of the delay. These comments did not hold any significant potential to arouse improper sympathy for the victim.

Slightly more troublesome was the prosecutor's comment that the defendant's wife performed "an act of mercy" by staying with him for sixteen years of marriage. It is possible, as the defendant argues, that a juror might have inferred from this remark that the prosecutor had personal knowledge of abuse or other domestic problems that had not been presented to the jury. It is far more likely, however, that jurors would have viewed the statement as a reference to impressions properly inferable from the evidence: namely, the defendant's persistent alcohol abuse and apparent total lack of industry. Moreover, in context, it was a reasonable riposte to the defendant's allegation that the victim and her mother had concocted the rape charges as an excuse for divorce. The prosecutor was merely suggesting to the jury that no contrived excuse was needed.

As to the two instances of the prosecutor's alleged misstatements of fact, suffice it to say there was record support for those comments. Although the prosecutor probably should have refrained from making any prognostications about the defendant's chances for divine redemption, in context the remark was merely a reminder to the jury·that their verdict should not be tempered by mercy, but premised strictly on the facts and the law.

*Judgment affirmed.*

---

[2]The prosecutor's inartful speech for the most part once again demonstrated the lack of thoughtful and careful preparation. See in this regard *Commonwealth* v. *McLeod*, 30 Mass. App. Ct. 536, 541 n.10 (1991).